IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 06-230 (GMS) |
| APOTEX, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MERCK & CO., INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION IN LIGHT OF MERCK'S COVENANT NOT TO SUE**

Plaintiff Merck & Co., Inc. ("Merck") moves for an order in the form attached (Exhibit A) dismissing this action for lack of subject matter jurisdiction because the covenant not to sue (Exhibit B) that Merck has given Defendant Apotex, Inc. ("Apotex") removed the controversy between the parties and has mooted this case. *Super Sack Manf. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).

**BACKGROUND**

This is an action for patent infringement based upon Apotex's filing of an Abbreviated New Drug Application ("ANDA"), which is directed to a generic version of Merck's FOSAMAX® tablets.   Apotex sent a "Paragraph IV" letter to Merck dated February 24, 2006, which notified Merck: that Apotex had filed ANDA No. 077-982 for a generic version of Merck's FOSAMAX® tablets, that Apotex intended to market such generic tablets before the expiration of nine Merck patents listed in the FDA's Orange Book for FOSAMAX® tablets, and that the ANDA certified that Merck's patents are invalid, unenforceable and/or will not be

infringed by the commercial manufacture, use, or sale of Apotex's alendronate sodium tablets before their expiration.[1]

Merck filed its complaint on April 7, 2006, and alleged patent infringement by Apotex of these nine patents pursuant to 35 U.S.C. § 271(e)(2)(A) based upon Apotex's filing of the ANDA (D.I. 1).   On May 9, 2006, Apotex answered the complaint by denying the infringement allegations and asserting a counterclaim seeking a declaration of invalidity and noninfringement of the nine patents (D.I. 8).   Merck answered Apotex's counterclaim on May 30, 2006 (D.I. 11).

Pursuant to a Confidentiality Agreement, Apotex forwarded to Merck excerpts of the ANDA.   After reviewing these excerpts, Merck notified Apotex in early July 2006 that it would grant a covenant not to sue on all claims of the patents in suit.   Merck forwarded a copy of the covenant not to sue on August 7, 2006 (Exhibit C).

At the scheduling conference held on August 8, 2006, Apotex indicated that it would contest dismissal based upon Merck's covenant not to sue (Exhibit D at 3-4).   Following the scheduling conference, Merck sent a proposed order of dismissal to Apotex, and invited Apotex to explain any disagreement (Exhibit E).   Apotex responded that the proposed order was "unacceptable," but failed to explain its position (Exhibit F).

## ARGUMENT

As a result of Merck's covenant not to sue, this action is moot and the Court lacks subject matter jurisdiction over the purported controversy.   *See Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631 (Fed. Cir. 1991); *Super Sack v. Chase*, 57 F.3d 1054 (Fed. Cir. 1995).   In particular, there is no subject matter jurisdiction over Apotex's counterclaim because Merck's

---

[1]   These nine patents are U.S. Patent Nos. 5,358,941; 5,681,590; 5,849,726; 6,008,207; 6,090,410; 6,194,004; 5,994,329; 6,015,801; and 6,225,294.

covenant not to sue moots Apotex's counterclaim.  *Super Sack*, 57 F.3d at 1059 (Although defendant "may have some cause to fear an infringement under the [patents in suit] based on products that it may develop in the future," there is no subject matter jurisdiction over defendant's counterclaims where plaintiff's covenant not to sue removed any "cause for concern that [defendant] can be held liable for any infringing acts involving products that it made, sold, or used on or before [the date of any covenant not to sue].").   As in *Super Sack*, Merck's covenant not to sue has removed any cause for concern that Apotex could be held liable for infringement of the patents in suit in connection with its generic tablets in the form they are now contemplated (which Apotex has represented is reflected in the excerpts of the ANDA produced to Merck under the confidentiality agreement).   Thus, the Court lacks subject matter jurisdiction over this action, including Apotex's counterclaim, and this action should be dismissed.

The Court addressed a virtually identical situation in another case earlier this year. In *Merck & Co., Inc. v. Watson Laboratories, Inc.*, C.A. No. 05-658 (GMS), Merck asserted the same nine patents against Watson, another generics company that also filed an ANDA for generic versions of Merck's FOSAMAX® tablets.   Watson asserted counterclaims seeking similar relief.   After reviewing excerpts of Watson's ANDA, Merck also granted a covenant not to sue to Watson.   Although Watson contested Merck's motion to dismiss, the Court dismissed Merck's claims and Watson's counterclaims in light of *Super Sack*.   *Merck & Co., Inc. v. Watson Laboratories, Inc.*, 2006 WL 1537375 (D. Del. 2006).   Like *Super Sack* and *Merck v. Watson*, this case should also be dismissed.

## CONCLUSION

Accordingly, Merck requests that the Court enter its proposed form of dismissal (Exhibit A) at the Court's earliest convenience.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

_____
Mary B. Graham (#2256)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Plaintiff Merck & Co., Inc.*

OF COUNSEL:

John F. Lynch
HOWREY, LLP
750 Bering Drive
Houston, TX   77057-2198
713.787.1400

Nicolas G. Barzoukas
Suzy S. Harbison
Jason C. Abair
WEIL, GOTSHAL & MANGES
700 Louisiana, Suite 1600
Houston, TX   77002
713.546.5000

Paul D. Matukaitis
Edward W. Murray
Gerard M. Devlin
MERCK & CO., INC.
126 E. Lincoln Avenue RY28-320
Rahway, NJ   07065-0907
732.594.4000

Dated:   August 16, 2006
532949

### CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2006, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

Richard L. Horwitz, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE  19899

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on August 16, 2006 upon the following individuals in the manner indicated:

| BY E-MAIL AND HAND DELIVERY | BY E-MAIL |
| --- | --- |
| Richard L. Horwitz, Esquire<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>Wilmington, DE  19899 | Louise Walsh, Esquire<br>WELSH & KATZ, LTD.<br>120 South Riverside Plaza; 22nd Floor<br>Chicago, IL  60606 |

*/s/ Mary B. Graham*

_____
Mary B. Graham (#2256)

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MERCK & CO., INC.,                          )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )        C.A. No. 06-230 (GMS)
                                            )
APOTEX, INC.,                               )
                                            )
                                            )
                Defendant.                  )
_____   )

## [PROPOSED] ORDER

IT IS HEREBY ORDERED THAT:

1.      Merck's motion to dismiss be GRANTED;

2.      All claims of Merck's complaint (D.I. 1) be DISMISSED with prejudice;

3.      All counterclaims of Apotex's Answer, Affirmative Defenses, and Counterclaims (D.I. 8) be DISMISSED for lack of subject matter jurisdiction; and

4.      Each party is to bear its own costs and attorneys' fees.

Dated: _____, 2006        _____
                                            UNITED STATES DISTRICT JUDGE

532950

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MERCK & CO., INC.

Plaintiff,

v.

APOTEX INC.,

Defendant.

C.A. No. 06-230 (GMS)

### COVENANT NOT TO SUE

WHEREAS, Merck & Co., Inc. ("Merck") owns all rights, titles and interest in U.S.
Patent Nos. 5,358,941 (the "'941 patent"), 5,681,590 (the "'590 patent"), 5,849,726 (the "'726
patent"), 6,008,207 (the "'207 patent"), 6,090,410 (the "'410 patent"), 6,194,004 (the "'004
patent"), 5,994,329 (the "'329 patent"), 6,015,801 (the "'801 patent"), and 6,225,294 (the "'294
patent");

WHEREAS, Apotex, Inc. ("Apotex") submitted abbreviated new drug application
("ANDA") No. 077-982 to the United States Food and Drug Administration for 5 mg, 10 mg, 35
mg, and 70 mg alendronate sodium tablets;

WHEREAS, Merck filed this civil action, captioned *Merck & Co., Inc. v. Apotex Inc.*,
C.A. No. 06-230 (GMS) on April 7, 2006, alleging that the products described in Apotex's
ANDA No. 077-982 infringe the '941, '590, '726, '207, '410, '004, '329, '801 and '294 patents;

WHEREAS, claims 23 and 37 of the '329 patent have been held invalid in *Merck & Co.,
Inc. v. Teva Pharmaceuticals USA, Inc.*, 288 F.Supp.2d 601 (D. Del. 2003), *rev'd* 395 F.3d 1364,

*reh'g and reh'g en banc denied* 405 F.3d 1388, *cert. denied* 126 S.Ct. 488 (2005) (the "Teva action");

WHEREAS, pursuant to a confidentiality agreement, Apotex produced to Merck portions of Apotex's ANDA No. 077-982 as pages numbered AM00001 – AM00303, which set out, among other things, that (1) the products that are the subject of ANDA No. 077-982 will not contain anhydrous lactose or hydrous fast flow lactose, and (2) the products that are the subject of ANDA No. 077-982 will not contain anhydrous alendronate sodium;

WHEREAS, based upon (1) the portions of Apotex's ANDA No. 077-982 numbered as AM00001 – AM00303 and (2) the judgment in the Teva action, Merck will grant Apotex a covenant not to sue with respect to the '941, '590, '726, '207, '410, '004, '329, '801 and '294 patents for the products described in ANDA No. 077-982, as set forth in the documents Apotex produced to Merck labeled as AM00001 – AM00303.

NOW, THEREFORE, Merck represents, stipulates, agrees and covenants as follows:

1.  Merck unconditionally represents, stipulates, agrees, and covenants that it will not sue Apotex for infringement of, or otherwise assert, enforce, or hold Apotex liable for infringement of any of the '941, '590, '726, '207, '410, '004, '329, '801 and '294 patents based on the importation, manufacture, use, sale, or offer for sale of the alendronate sodium tablets that are the subject of and described in Apotex's ANDA No. 077-982, as produced to Merck as pages labeled as AM00001 – AM00303.

2.  This covenant has no bearing upon whether Apotex's filing of ANDA No. 077-982 infringes any claims of the '941, '590, '726, '207, '410, '004, '329, '801 and '294 patents.

3.     This covenant has no bearing upon the validity or enforceability of any claims of

the '941, '590, '726, '207, '410, '004, '329, '801 and '294 patents.

Dated: August 4th , 2006.

MERCK & CO., INC.

By:     *Edward W. Murray*
        Edward W. Murray
        Counsel, Intellectual Property Litigation

EXHIBIT C

**·Jason Abair /HO/WGM/US**
08/07/2006 10:02 AM

To   rbbreisblatt@welshkatz.com

cc   mgraham@mnat.com

bcc

Subject   Merck v. Apotex Covenant

Bob:  I have attached a corrected covenant.  Will you be available this afternoon to discuss dismissal of the case?

Thanks,
Jason



Merck v. Apotex Covenant.pdf

Jason Abair
Weil, Gotshal & Manges, LLP
700 Louisiana, Suite 1600
Houston, TX  77002

Phone: (713) 546-5062
Fax: (713) 224-9511

< END >

EXHIBIT D

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                         -   -   -

 4    MERCK & CO., INC.,        :      Civil Action
                                :
 5              Plaintiff,      :
                                :
 6        v.                    :
                                :
 7    APOTEX INC.,              :
                                :
 8              Defendant.  :      No. 06-230-GMS

 9                         -   -   -

10                  Wilmington, Delaware
                 Tuesday, August 8, 2006
11                    10:00 a.m.
                    In Chambers
12
                         -   -   -
13

      BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
14
      APPEARANCES:
15
                 MARY B. GRAHAM, ESQ.
16               Morris, Nichols, Arsht & Tunnell

17                              Counsel for Plaintiff

18               RICHARD L. HORWITZ, ESQ.
                 Potter Anderson & Corroon LLP
19                    -and-
                 LOUISE T. WALSH, ESQ.
20               Welsh & Katz
                 (Chicago, Illinois)
21
                                Counsel for Defendant
22
                         -   -   -
23

24

25
```

2

1  THE COURT: Good morning, counsel. Let's do
2  identifications for the record.
3  MS. GRAHAM: I am Mary Graham on behalf of
4  Merck.
5  MR. HORWITZ: Good morning, Your Honor. Rich
6  Horwitz from Potter Anderson for Apotex. With me today from
7  Welsh & Katz in Chicago is Louise Walsh.
8  MS. WALSH: Good morning, Your Honor.
9  THE COURT: Good morning. The question of the
10 day has to be, did you make the trip for nothing? If that
11 is the case -- and I don't know that that is the case -- I
12 want to extend apologies, because we perhaps could have --
13 and maybe there is some defect in my system that should have
14 flagged the issue that is raised in the joint status report,
15 though a motion hasn't been filed as far as I can tell, but
16 it sort of looms, it comes up I think in the first paragraph
17 of the status report. Frankly, until I picked it up
18 yesterday to read, I wasn't aware that there was a Super
19 Sack issue in the case, and there apparently is.
20 MS. GRAHAM: Right.
21 THE COURT: Is it Merck's intention to move?
22 MS. GRAHAM: Your Honor, as you observed, Merck
23 has --
24 THE COURT: Not that you have to.
25 MS. GRAHAM: Because Merck has given an assigned

3

1  unconditional covenant not to sue of the type given in
2  Watson, it is Merck's position that this case should be
3  dismissed. We have simply been waiting to hear what
4  Apotex's position was, whether it would agree to a dismissal
5  or not. And Ms. Walsh has informed me this morning that
6  Apotex wants to preserve its position and therefore does
7  want to brief a motion to dismiss.
8  Subject to, obviously, the Court having other
9  desires, our intention would be to file a motion to dismiss
10 within a week, such that Apotex and Merck could then do the
11 briefing and submit it to Your Honor for ruling.
12 THE COURT: Counsel.
13 MS. WALSH: I am aware of your decision in the
14 Watson case. Although I don't think the issues were
15 presented to you as well as they could have been, I am aware
16 that it's not likely that you will rule any differently than
17 you did in the Watson case.
18 However, we don't think this is really a Super
19 Sack case because that didn't involve the Hatch-Waxman Act.
20 We think there are some issues here that deserve to be
21 looked at it. In fact, similar issues, although under a
22 slightly different factual scenario, are pending in the form
23 of a cert. petition before the Supreme Court in the Apotex
24 v. Pfizer case.
25 The Supreme Court has asked the Solicitor

4

1  General's office for its input, and that hasn't been given
2  yet. But my understanding is that when the Solicitor
3  General is asked for his opinion that chances are good that
4  the Supreme Court will accept a case.
5  So the issues that we are facing here may be
6  pending before the Supreme Court maybe by the end of the
7  year or the beginning of 2007. That may influence any
8  appeal we file.
9  So I understand your ruling in the Watson case.
10 We respectfully would disagree, and that's why we want to
11 have our arguments on the record in the form of a response
12 to their motion to dismiss, then be able to appeal that and
13 see what happens in the Supreme Court as to what effect that
14 might have on our case.
15 THE COURT: I think you are entitled to your day
16 in court on it. You think it is a different issue. Two
17 things you have said that stand out. Number one, the Watson
18 issue, the issues in Watson may have been presented perhaps
19 a little more cogently. You didn't use that word, that is
20 my word. Secondly, the posture was different, one is a
21 Hatch-Waxman.
22 MS. WALSH: Super Sack didn't involve
23 Hatch-Waxman. There is a collateral fact of this 180-day
24 trigger that is not present in your normal patent case. The
25 fact that if the case is dismissed without any holding by

5

1  this Court on whether there is invalidity or
2  noninfringement, then that deprives Apotex of being able to
3  get around this 180-day exclusivity, which is -- I think
4  Apotex has that right. Those are the arguments that have
5  been made.
6  One of the cases that I mentioned, there is
7  another case, the Teva v. Pfizer case which was before the
8  Federal Circuit, involving a similar factual scenario.
9  Although in that case, the brand didn't sue within the 45
10 days, then the generic filed the DJ action. But it was
11 dismissed for lack of subject matter jurisdiction. It is
12 the same type of issue, although in this case we are sued
13 and given the covenant not to sue once they decided there
14 was no infringement.
15 But in the Teva v. Pfizer case, there was a --
16 again, that went against the generic, but there was a motion
17 for rehearing en banc which was refused. But there was two
18 dissenting opinions in that case. For the reasons given in
19 those dissenting opinions, that is the basis for the
20 argument.
21 THE COURT: Who dissented?
22 MS. WALSH: Judge Dyk and Gajarsa, I believe. I
23 have that somewhere in my file, but I wouldn't swear to
24 that.
25 THE COURT: For some reason, I left the joint

6

1  status report on my desk. Ms. Walker has one.
2       Actually, I have some scribble on mine.
3       MS. GRAHAM: Your Honor, if I might respond in
4  terms of the merits of the motion to dismiss. We don't
5  think there will be any new issues raised on this motion to
6  dismiss. Your Honor may recall that Watson also raised the
7  point that because it was a Hatch-Waxman case that that made
8  it different than Super Sack. We briefed that issue and the
9  Court decided to dismiss the case.
10      I may also have heard Ms. Walsh say, and I want
11 to correct for the record, I thought I heard her say that
12 once Merck had decided that Apotex didn't infringe and our
13 covenant not to sue specifically, as was the case in Watson,
14 the covenant is not to sue, but it says it has no bearing on
15 the issue of infringement or invalidity, and I want that to
16 be clear on this transcript in case somebody pores over it
17 down the road at some point.
18      THE COURT: You have proposed a schedule. Why
19 don't we build into that a deadline for filing a motion to
20 dismiss. Just brief it under the Local Rule.
21      MR. HORWITZ: We had talked about Merck filing
22 the motion within a week.
23      MS. GRAHAM: That is fine with us. It will be
24 filed by next Tuesday, the 15th.
25      THE COURT: We will get to it as quickly as

7

1  possible. But I don't want to convey the impression that
2  this just jumps to the head of the class. It won't, because
3  first and foremost -- well, importantly, this will land on
4  the desk of a brand-new law clerk within the next couple of
5  weeks. She is going to have plenty else to do in getting
6  ready for other things that are ahead of us.
7       But we will look at it, and certainly I will
8  look at your briefs myself as quickly as possible and make a
9  decision. If there really is something to distinguish it
10 from Watson, it should be addressed, especially with it
11 percolating around in the Supreme Court, that is the issue
12 percolating around in the Supreme Court.
13      It will be interesting to see what the Solicitor
14 General has to say about it.
15      MR. HORWITZ: Your Honor, we will try to get our
16 papers in as quickly as we can. Then if Your Honor wants to
17 have argument either in person or on the phone to help
18 expedite it, I know you have mentioned what the
19 circumstances are in your chambers, we will do anything we
20 can to make it easier for the Court to decide it as quickly
21 as we can.
22      THE COURT: So cert. has been granted.
23      MS. WALSH: No.
24      THE COURT: Cert. has been sought.
25      MS. WALSH: Cert. has been sought and the

8

1  Supreme Court sought the Solicitor General's opinion, which
2  has not yet been submitted.
3       THE COURT: When is it due?
4       MS. WALSH: My understanding is that the
5  Solicitor General's Office doesn't have deadlines. They
6  submit when they choose to submit.
7       MR. HORWITZ: That is not in our Local Rules.
8       THE COURT: No. Is that in the Supreme Court's
9  Rules?
10      MS. WALSH: My understanding is oftentimes the
11 Solicitor General's Office has to consult other government
12 agencies, and who knows how long some things take. But I
13 don't know too much about it.
14      THE COURT: The schedule that is attached to the
15 joint status report, I think it's Exhibit 2, the chart,
16 actually, the schedule is actually at 1, the proposed
17 schedule, we can just work quickly from the chart that is
18 Exhibit 2.
19      The only differences that I am going to impose
20 are as follows. Probably just for future reference, it
21 probably doesn't make a lot of sense to propose specific
22 dates and times for things like status conferences and
23 pretrial conferences, leave that to the Court to exercise
24 its own discretion. I know they are just suggestions, but
25 rather specific.

9

1       6/12 at 8:30 will be our teleconference, should
2  it occur, to discuss the letter briefs seeking permission to
3  file summary judgment. Ms. Walsh?
4       It says 6/6. I am changing that to 6/12 at
5  8:30. So case-dispositives will be due 6/26.
6       And there is not going to be a status/Daubert
7  conference. You can eliminate that altogether. We have
8  just not been utilizing that feature. We haven't found the
9  need, the parties haven't found a need to get on the phone.
10 We take care of it in the, there is enough spacing between
11 the pretrial order due and the pretrial conference and the
12 trial to deal with Daubert issues, I think.
13      Pretrial order will be due close of business
14 10/15.
15      Pretrial conference will take place on 11/13 at
16 10:00 o'clock.
17      The case will come to trial 12/10. Five-day
18 Bench trial seems reasonable under these circumstances, the
19 number of days.
20      All the other dates seem to me to make sense.
21      There is no provision for a Markman hearing.
22 The parties agree there is no need for a Markman hearing.
23      MS. GRAHAM: Right.
24      THE COURT: That is a nice thing about ANDA
25 cases.

**10**

1    So the other dates are on the record, Rule 26

2    initial disclosures, August 21.

3    Joinder of parties and amendment of pleadings,

4    October 13.

5    Reliance upon advice of counsel, notification by

6    September 20.

7    And the production of opinions by October 20,

8    '06.

9    Fact discovery cutoff, that is all discovery

10    needs to be initiated in time to be completed by February

11    20th.

12    MR. HORWITZ: Your Honor, I note we had the

13    wrong year there.

14    THE COURT: That should be '07, yes.

15    Expert discovery will end 4/5, '07 again.

16    Opening expert reports are due 2/5/07. Rebuttals 3/5/07.

17    The letter briefing process for seeking

18    permission to file motions for summary judgment will be as

19    follows: opening 5/9, answering 5/23, and reply 5/30.

20    I think all the other dates have been set out on

21    the record.

22    Discovery disputes, keep in mind that you have

23    three opportunities to raise discovery disputes through my

24    process that I have here in chambers by calling and telling

25    my staff that you have got an impasse, arrived at an impasse

**11**

1    and that you need the help of the Court, you just can't get

2    it done without the help of the Court. If that is really

3    the case, they will tell you please have a letter of no more

4    than two pages into chambers no less than 48 hours in

5    advance of the date for telephone conference that they will

6    give you. And please make the letter nonargumentative,

7    outline, broad strokes, the nature of the dispute. And we

8    will talk about it. If we can't resolve it, you will get a

9    chance to write, if necessary, in the form of letter briefs

10    or full motions briefing.

11    I say three times, just, Ms. Walsh, for your

12    benefit, most especially, because I think this is the first

13    time we met, it has come to pass that over time, given the

14    number of particularly patent cases of each of the four

15    judges in this district, soon to be three judges at least

16    for a time, once Judge Jordan moves onto the Third Circuit,

17    and we do anticipate, hopefully not too much of a lag, but

18    there is going to be some and nobody can predict what is

19    going to happen with that, the judges here carry, I am told

20    by reliable sources, Mr. Shaw reported to a PLI panel that

21    he is on that we are carrying at least 60 cases per judge.

22    So discovery disputes can become problematic

23    insofar as they do raise their heads in patent litigation,

24    not that any case in federal court isn't serious, but it is

25    high-stakes litigation. It comes to pass oftentimes you

**12**

1    can't agree on discovery disputes and matters. So you bring

2    them.

3    But if you bring them too often, they begin to

4    become burdensome. So I have taken to the tact of allowing

5    three bites at the apple. I have even gone beyond that, but

6    usually, as a rule, it is not a wooden cutoff, but as a rule

7    I cut you off at that point and send you on to one of our

8    discovery masters, or to the panel, and somebody makes an

9    assignment. That happens.

10    So that is the way discovery disputes gets

11    resolved and that is the rationale for my limit on three.

12    In this district, we have not had the luxury in

13    the past of multiple magistrate judges. We are about to

14    have that luxury, come roughly April '07. So it will

15    probably be the case that our magistrate judges will handle

16    some of these for us. Right now our one Magistrate Judge is

17    very effectively burdened by her ADR work. Everybody has

18    determined that it's the best use of her time, so we don't

19    have her doing discovery disputes.

20    Pretrial order, should it come to pass that we

21    get that far in this process, the pretrial order is on the

22    Court's website. If you are not familiar with it -- and

23    there is no reason for you to be -- you need to download it

24    and become very familiar with it. It is not a jury trial,

25    so in terms of its requirements it is not as tight. But

**13**

1    there still could be matters you might waive if you don't

2    read it and read it carefully.

3    Motions in limine in an ANDA case, it strikes

4    me, are generally pretty much a waste of time and your

5    clients' money. You practice law the way you want. I am

6    not going to try to micromanage how you practice law. But

7    it is a Bench trial. I will probably allow whatever it is

8    you complain about anyway. So use your judgment and decide

9    where you really want to make your fights there.

10    I am trying to think what else I can say to make

11    your trip worthwhile, Ms. Walsh. It is a long way to come.

12    MS. WALSH: Visit to Wilmington, first time,

13    so...

14    THE COURT: Welcome. Hope you had a nice,

15    though brief, stay.

16    Any questions about any of the process? What

17    did I see about settlement. Yes. Is it the parties desire

18    to have this referred to the Magistrate Judge?

19    MS. GRAHAM: I don't really think that will make

20    any difference here, Your Honor.

21    MS. WALSH: I think she is right.

22    THE COURT: Okay.

23    MS. GRAHAM: As good as she is.

24    MR. HORWITZ: Your Honor, one thing that is

25    coming up on the schedule is the date for initial

14

1  disclosures.  If the parties can reach an agreement to push

2  that back, we haven't really talked about it, but do we need

3  to involve the Court with something like that?

4          THE COURT:  Not at all.  Just change the date on

5  the submission.

6          I will burden plaintiff with preparing the

7  schedule.  If you can get over here next Tuesday, that would

8  be good.

9          MS. GRAHAM:  We will do that, Your Honor.

10          THE COURT:  All right.  Appreciate your time

11  and, as I said, I will certainly get to the motion as

12  quickly as possible, under the circumstances, since we don't

13  know when the Solicitor General is going to advise us of its

14  intentions.

15          (Conference concluded at 10:30 a.m.)

16              - - -

17  Reporter:  Kevin Maurer

18

19

20

21

22

23

24

25

| | |
|---|---|

**'06** [1] - 10:8
**'07** [3] - 10:14, 10:15, 12:14

## 0

**06-230-gms** [1] - 1:8

## 1

**1** [1] - 8:16
**10/15** [1] - 9:14
**10:00** [2] - 1:11, 9:16
**10:30** [1] - 14:15
**11/13** [1] - 9:15
**12/10** [1] - 9:17
**13** [1] - 10:4
**15th** [1] - 6:24
**180-day** [2] - 4:23, 5:3

## 2

**2** [2] - 8:15, 8:18
**2/5/07** [1] - 10:16
**20** [2] - 10:6, 10:7
**2006** [1] - 1:10
**2007** [1] - 4:7
**20th** [1] - 10:11
**21** [1] - 10:2
**26** [1] - 10:1

## 3

**3/5/07** [1] - 10:16

## 4

**4/5** [1] - 10:15
**45** [1] - 5:9
**48** [1] - 11:4

## 5

**5/23** [1] - 10:19
**5/30** [1] - 10:19
**5/9** [1] - 10:19

## 6

**6/12** [2] - 9:1, 9:4
**6/26** [1] - 9:5
**6/6** [1] - 9:4
**60** [1] - 11:21

## 8

**8** [1] - 1:10

## A

**able** [2] - 4:12, 5:2
**accept** [1] - 4:4
**Act** [1] - 3:19
**Action** [1] - 1:4
**action** [1] - 5:10
**addressed** [1] - 7:10
**Adr** [1] - 12:17
**advance** [1] - 11:5
**advice** [1] - 10:5
**advise** [1] - 14:13
**agencies** [1] - 8:12
**agree** [3] - 3:4, 9:22, 12:1
**agreement** [1] - 14:1
**ahead** [1] - 7:6
**allow** [1] - 13:7
**allowing** [1] - 12:4
**altogether** [1] - 9:7
**amendment** [1] - 10:3
**Anda** [2] - 9:24, 13:3
**Anderson** [2] - 1:18, 2:6
**answering** [1] - 10:19
**anticipate** [1] - 11:17
**anyway** [1] - 13:8
**apologies** [1] - 2:12
**Apotex** [8] - 1:7, 2:6, 3:6, 3:10, 3:23, 5:2, 5:4, 6:12
**Apotex's** [1] - 3:4
**appeal** [2] - 4:8, 4:12
**Appearances** [1] - 1:14
**apple** [1] - 12:5
**Appreciate** [1] - 14:10
**April** [1] - 12:14
**argument** [2] - 5:20, 7:17
**arguments** [2] - 4:11, 5:4
**arrived** [1] - 10:25
**Arsht** [1] - 1:16
**assigned** [1] - 2:25
**assignment** [1] - 12:9
**attached** [1] - 8:14
**August** [2] - 1:10, 10:2
**aware** [3] - 2:18, 3:13, 3:15

## B

**banc** [1] - 5:17
**basis** [1] - 5:19
**bearing** [1] - 6:14
**become** [3] - 11:22, 12:4, 12:24
**begin** [1] - 12:3
**beginning** [1] - 4:7
**behalf** [1] - 2:3
**Bench** [2] - 9:18, 13:7
**benefit** [1] - 11:12
**best** [1] - 12:18
**between** [1] - 9:10
**beyond** [1] - 12:5
**bites** [1] - 12:5
**brand** [2] - 5:9, 7:4
**brand-new** [1] - 7:4
**brief** [3] - 3:7, 6:20, 13:15
**briefed** [1] - 6:8
**briefing** [3] - 3:11, 10:17, 11:10
**briefs** [3] - 7:8, 9:2, 11:9
**bring** [2] - 12:1, 12:3
**broad** [1] - 11:7
**build** [1] - 6:19
**burden** [1] - 14:6
**burdened** [1] - 12:17
**burdensome** [1] - 12:4
**business** [1] - 9:13

## C

**care** [1] - 9:10
**carefully** [1] - 13:2
**carry** [1] - 11:19
**carrying** [1] - 11:21
**case** [29] - 2:11, 2:19, 3:2, 3:14, 3:17, 3:19, 3:24, 4:4, 4:9, 4:14, 4:24, 4:25, 5:7, 5:9, 5:12, 5:15, 5:18, 6:7, 6:9, 6:13, 6:16, 9:5, 9:17, 11:3, 11:24, 12:15, 13:3
**case-dispositives** [1] - 9:5
**cases** [4] - 5:6, 9:25, 11:14, 11:21
**Cert** [2] - 7:24, 7:25
**cert** [2] - 3:23, 7:22
**certainly** [2] - 7:7, 14:11
**Chambers** [1] - 1:11
**chambers** [3] - 7:19, 10:24, 11:4

**chances** [1] - 4:3
**change** [1] - 14:4
**changing** [1] - 9:4
**chart** [2] - 8:15, 8:17
**Chicago** [2] - 1:20, 2:7
**choose** [1] - 8:6
**Circuit** [2] - 5:8, 11:16
**circumstances** [3] - 7:19, 9:18, 14:12
**Civil** [1] - 1:4
**class** [1] - 7:2
**clear** [1] - 6:16
**clerk** [1] - 7:4
**clients'** [1] - 13:5
**close** [1] - 9:13
**Co** [1] - 1:4
**cogently** [1] - 4:19
**collateral** [1] - 4:23
**coming** [1] - 13:25
**complain** [1] - 13:8
**completed** [1] - 10:10
**concluded** [1] - 14:15
**conference** [4] - 9:7, 9:11, 9:15, 11:5
**Conference** [1] - 14:15
**conferences** [2] - 8:22, 8:23
**consult** [1] - 8:11
**convey** [1] - 7:1
**correct** [1] - 6:11
**Corroon** [1] - 1:18
**Counsel** [3] - 1:17, 1:21, 3:12
**counsel** [2] - 2:1, 10:5
**couple** [1] - 7:4
**court** [2] - 4:16, 11:24
**Court** [38] - 1:1, 2:1, 2:9, 2:21, 2:24, 3:8, 3:12, 3:23, 3:25, 4:4, 4:6, 4:13, 4:15, 5:1, 5:21, 5:25, 6:9, 6:18, 6:25, 7:11, 7:12, 7:20, 7:22, 7:24, 8:1, 8:3, 8:8, 8:14, 8:23, 9:24, 10:14, 11:1, 11:2, 13:14, 13:22, 14:3, 14:4, 14:10
**Court's** [2] - 8:8, 12:22
**covenant** [4] - 3:1, 5:13, 6:13, 6:14
**cut** [1] - 12:7

**cutoff** [2] - 10:9, 12:6

## D

**date** [3] - 11:5, 13:25, 14:4
**dates** [4] - 8:22, 9:20, 10:1, 10:20
**Daubert** [1] - 9:12
**days** [2] - 5:10, 9:19
**deadline** [1] - 6:19
**deadlines** [1] - 8:5
**deal** [1] - 9:12
**decide** [2] - 7:20, 13:8
**decided** [3] - 5:13, 6:9, 6:12
**decision** [2] - 3:13, 7:9
**defect** [1] - 2:13
**Defendant** [2] - 1:8, 1:21
**Delaware** [2] - 1:2, 1:10
**deprives** [1] - 5:2
**deserve** [1] - 3:20
**desire** [1] - 13:17
**desires** [1] - 3:9
**desk** [2] - 6:1, 7:4
**determined** [1] - 12:18
**difference** [1] - 13:20
**differences** [1] - 8:19
**different** [4] - 3:22, 4:16, 4:20, 6:8
**differently** [1] - 3:16
**disagree** [1] - 4:10
**disclosures** [2] - 10:2, 14:1
**discovery** [9] - 10:9, 10:15, 10:23, 11:22, 12:1, 12:8, 12:10, 12:19
**Discovery** [1] - 10:22
**discretion** [1] - 8:24
**discuss** [1] - 9:2
**dismiss** [7] - 3:7, 3:9, 4:12, 6:4, 6:6, 6:9, 6:20
**dismissal** [1] - 3:4
**dismissed** [3] - 3:3, 4:25, 5:11
**dispositives** [1] - 9:5
**dispute** [1] - 11:7
**disputes** [6] - 10:22, 10:23, 11:22, 12:1, 12:10, 12:19
**dissented** [1] - 5:21
**dissenting** [2] - 5:18, 5:19

**distinguish** [1] - 1:8, 5:17
**district** [2] - 11:15, 12:12
**District** [2] - 1:1, 1:2
**Dj** [1] - 5:10
**done** [1] - 11:2
**down** [1] - 6:17
**download** [1] - 12:23
**due** [5] - 8:3, 9:5, 9:11, 9:13, 10:16
**Dyk** [1] - 5:22

### E

**easier** [1] - 7:20
**effect** [1] - 4:13
**effectively** [1] - 12:17
**either** [1] - 7:17
**eliminate** [1] - 9:7
**en** [1] - 5:17
**end** [2] - 4:6, 10:15
**entitled** [1] - 4:15
**especially** [2] - 7:10, 11:12
**Esq** [3] - 1:15, 1:18, 1:19
**exclusivity** [1] - 5:3
**exercise** [1] - 8:23
**Exhibit** [2] - 8:15, 8:18
**expedite** [1] - 7:18
**Expert** [1] - 10:15
**expert** [1] - 10:16
**extend** [1] - 2:12

### F

**facing** [1] - 4:5
**Fact** [1] - 10:9
**fact** [3] - 3:21, 4:23, 4:25
**factual** [2] - 3:22, 5:8
**familiar** [2] - 12:22, 12:24
**far** [2] - 2:15, 12:21
**feature** [1] - 9:8
**February** [1] - 10:10
**federal** [1] - 11:24
**Federal** [1] - 5:8
**fights** [1] - 13:9
**file** [5] - 3:9, 4:8, 5:23, 9:3, 10:18
**filed** [3] - 2:15, 5:10, 6:24
**filing** [2] - 6:19, 6:21
**fine** [1] - 6:23
**first** [4] - 2:16, 7:3, 11:12, 13:12
**Five** [1] - 9:17

**Fiveday** [1] - 9:17
**flagged** [2] - 2:14
**follows** [2] - 8:20, 10:19
**foremost** [1] - 7:3
**form** [3] - 3:22, 4:11, 11:9
**four** [1] - 11:14
**Frankly** [1] - 2:17
**full** [1] - 11:10
**future** [1] - 8:20

### G

**Gajarsa** [1] - 5:22
**General** [3] - 4:3, 7:14, 14:13
**General's** [4] - 4:1, 8:1, 8:5, 8:11
**generally** [1] - 13:4
**generic** [2] - 5:10, 5:16
**given** [6] - 2:25, 3:1, 4:1, 5:13, 5:18, 11:13
**government** [1] - 8:11
**Graham** [12] - 1:15, 2:3, 2:20, 2:22, 2:25, 6:3, 6:23, 9:23, 13:19, 13:23, 14:9
**granted** [1] - 7:22
**Gregory** [1] - 1:13

### H

**handle** [1] - 12:15
**Hatch** [4] - 3:19, 4:21, 4:23, 6:7
**Hatch-waxman** [4] - 3:19, 4:21, 4:23, 6:7
**head** [1] - 7:2
**heads** [1] - 11:23
**hear** [1] - 3:3
**heard** [2] - 6:10, 6:11
**hearing** [1] - 9:21, 9:22
**help** [3] - 7:17, 11:1, 11:2
**high** [1] - 11:25
**high-stakes** [1] - 11:25
**holding** [1] - 4:25
**Honor** [12] - 2:5, 2:8, 2:22, 3:11, 6:3, 6:6, 7:15, 7:16, 10:12, 13:20, 13:24, 14:9
**Honorable** [1] - 1:13
**Hope** [1] - 13:14
**hopefully** [1] - 11:17
**Horwitz** [8] - 1:18,

**2:5, 2:16, 6:21, 7:15, 8:7, 10:12, 13:24
**hours** [1] - 11:4

### I

**identifications** [1] - 2:2
**Illinois** [1] - 1:20
**impasse** [2] - 10:25
**importantly** [1] - 7:3
**impose** [1] - 8:19
**impression** [1] - 7:1
**Inc** [2] - 1:4, 1:7
**influence** [1] - 4:7
**informed** [1] - 3:5
**infringe** [1] - 6:12
**infringement** [2] - 5:14, 6:15
**initial** [2] - 10:2, 13:25
**initiated** [1] - 10:10
**input** [1] - 4:1
**insofar** [1] - 11:23
**intention** [2] - 2:21, 3:9
**intentions** [1] - 14:14
**interesting** [1] - 7:13
**invalidity** [2] - 5:1, 6:15
**involve** [3] - 3:19, 4:22, 14:3
**involving** [1] - 5:8
**issue** [8] - 2:14, 2:19, 4:16, 4:18, 5:12, 6:8, 6:15, 7:11
**issues** [7] - 3:14, 3:20, 3:21, 4:5, 4:18, 6:5, 9:12

### J

**Joinder** [1] - 10:3
**joint** [3] - 2:14, 5:25, 8:15
**Jordan** [1] - 11:16
**Judge** [4] - 5:22, 11:16, 12:16, 13:18
**judge** [1] - 11:21
**judges** [5] - 11:15, 11:19, 12:13, 12:15
**judgment** [2] - 9:3, 10:18, 13:8
**jumps** [1] - 7:2
**jurisdiction** [1] - 5:11
**jury** [1] - 12:24

**Katz** [2] - 1:20, 2:7
**keep** [1] - 10:22
**Kevin** [1] - 14:17
**knows** [1] - 8:12

### L

**lack** [1] - 5:11
**lag** [1] - 11:17
**land** [1] - 7:3
**law** [3] - 7:4, 13:5, 13:6
**least** [2] - 11:15, 11:21
**leave** [1] - 8:23
**left** [1] - 5:25
**less** [1] - 11:4
**letter** [5] - 9:2, 10:17, 11:3, 11:6, 11:9
**likely** [1] - 3:16
**limine** [1] - 13:3
**limit** [1] - 12:11
**litigation** [2] - 11:23, 11:25
**Llp** [1] - 1:18
**Local** [2] - 6:20, 8:7
**look** [2] - 7:7, 7:8
**looked** [1] - 3:21
**looms** [1] - 2:16
**Louise** [2] - 1:19, 2:7
**luxury** [2] - 12:12, 12:14

### M

**Magistrate** [2] - 12:16, 13:18
**magistrate** [2] - 12:13, 12:15
**Markman** [2] - 9:21, 9:22
**Mary** [2] - 1:15, 2:3
**masters** [1] - 12:8
**matter** [1] - 5:11
**matters** [2] - 12:1, 13:1
**Maurer** [1] - 14:17
**mentioned** [2] - 5:6, 7:18
**Merck** [7] - 1:4, 2:4, 2:22, 2:25, 3:10, 6:12, 6:21
**Merck's** [2] - 2:21, 3:2
**merits** [1] - 6:4
**met** [1] - 11:13
**micromanage** [1] - 13:6

**might** [2] - 4:14, 6:3, 13:1
**mind** [1] - 10:22
**mine** [1] - 6:2
**money** [1] - 13:5
**morning** [5] - 2:1, 2:5, 2:8, 2:9, 3:5
**Morris** [1] - 1:16
**most** [1] - 11:12
**motion** [10] - 2:15, 3:7, 3:9, 4:12, 5:16, 6:4, 6:5, 6:19, 6:22, 14:11
**motions** [2] - 10:18, 11:10
**Motions** [1] - 13:3
**move** [1] - 2:21
**moves** [1] - 11:16
**multiple** [1] - 12:13

### N

**nature** [1] - 11:7
**necessary** [1] - 11:9
**need** [6] - 9:9, 9:22, 11:1, 12:23, 14:2
**needs** [1] - 10:10
**new** [2] - 6:5, 7:4
**next** [3] - 6:24, 7:4, 14:7
**nice** [1] - 9:24, 13:14
**Nichols** [1] - 1:16
**nobody** [1] - 11:18
**nonargumentative** [1] - 11:6
**noninfringement** [1] - 5:2
**normal** [1] - 4:24
**note** [1] - 10:12
**nothing** [1] - 2:10
**notification** [1] - 10:5
**number** [2] - 9:19, 11:14
**Number** [1] - 4:17

### O

**o'clock** [1] - 9:16
**observed** [1] - 2:22
**obviously** [1] - 3:8
**occur** [1] - 9:2
**October** [2] - 10:4, 10:7
**office** [1] - 4:1
**Office** [2] - 8:5, 8:11
**often** [1] - 12:3
**oftentimes** [1] - 8:10, 11:25
**once** [3] - 5:13, 6:12,

**one** [6] - 4:17, 4:20, 6:1, 12:7, 12:16, 13:24
**One** [1] - 5:6
**Opening** [1] - 10:16
**opening** [1] - 10:19
**opinion** [2] - 4:3, 8:1
**opinions** [3] - 5:18, 5:19, 10:7
**opportunities** [1] - 10:23
**order** [4] - 9:11, 9:13, 12:20, 12:21
**outline** [1] - 11:7
**own** [1] - 8:24

## P

**pages** [1] - 11:4
**panel** [2] - 11:20, 12:8
**papers** [1] - 7:16
**paragraph** [1] - 2:16
**particularly** [1] - 11:14
**parties** [5] - 9:9, 9:22, 10:3, 13:17, 14:1
**pass** [3] - 11:13, 11:25, 12:20
**past** [1] - 12:13
**patent** [3] - 4:24, 11:14, 11:23
**pending** [2] - 3:22, 4:6
**per** [1] - 11:21
**percolating** [2] - 7:11, 7:12
**perhaps** [2] - 2:12, 4:18
**permission** [2] - 9:2, 10:18
**person** [1] - 7:17
**petition** [1] - 3:23
**Pfizer** [3] - 3:24, 5:7, 5:15
**phone** [2] - 7:17, 9:9
**picked** [1] - 2:17
**place** [1] - 9:15
**plaintiff** [1] - 14:6
**Plaintiff** [2] - 1:5, 1:17
**pleadings** [1] - 10:3
**plenty** [1] - 7:5
**Pli** [1] - 11:20
**point** [3] - 6:7, 6:17, 12:7
**pores** [1] - 6:16
**position** [3] - 3:2,

**possible** [3] - 7:1, 7:8, 14:12
**posture** [1] - 4:20
**Potter** [2] - 1:18, 2:6
**practice** [2] - 13:5, 13:6
**predict** [1] - 11:18
**preparing** [1] - 14:6
**present** [1] - 4:24
**presented** [2] - 3:15, 4:18
**preserve** [1] - 3:6
**pretrial** [4] - 8:23, 9:11, 12:21
**Pretrial** [3] - 9:13, 9:15, 12:20
**pretty** [1] - 13:4
**problematic** [1] - 11:22
**process** [4] - 10:17, 10:24, 12:21, 13:16
**production** [1] - 10:7
**propose** [1] - 8:21
**proposed** [2] - 6:18, 8:16
**provision** [1] - 9:21
**push** [1] - 14:1

## Q

**questions** [1] - 13:16
**quickly** [6] - 6:25, 7:8, 7:16, 7:20, 8:17, 14:12

## R

**raise** [2] - 10:23, 11:23
**raised** [3] - 2:14, 6:5, 6:6
**rather** [1] - 8:25
**rationale** [1] - 12:11
**reach** [1] - 14:1
**read** [3] - 2:18, 13:2
**ready** [1] - 7:6
**really** [6] - 3:18, 7:9, 11:2, 13:9, 13:19, 14:2
**reason** [2] - 5:25, 12:23
**reasonable** [1] - 9:18
**reasons** [1] - 5:18
**Rebuttals** [1] - 10:16
**record** [5] - 2:2, 4:11, 6:11, 10:1, 10:21
**reference** [1] - 8:20
**referred** [1] - 13:18
**refused** [1] - 5:17

**reliable** [1] - 11:20
**Reliance** [1] - 10:5
**reply** [1] - 10:19
**report** [4] - 2:14, 2:17, 6:1, 8:15
**reported** [1] - 11:20
**Reporter** [1] - 14:17
**reports** [1] - 10:16
**requirements** [1] - 12:25
**resolve** [1] - 11:8
**resolved** [1] - 12:11
**respectfully** [1] - 4:10
**respond** [1] - 6:3
**response** [1] - 4:11
**Rich** [1] - 2:5
**Richard** [1] - 1:18
**road** [1] - 6:17
**roughly** [1] - 12:14
**rule** [3] - 3:16, 12:6
**Rule** [2] - 6:20, 10:1
**Rules** [2] - 8:7, 8:9
**ruling** [2] - 3:11, 4:9

## S

**Sack** [4] - 2:19, 3:19, 4:22, 6:8
**scenario** [2] - 3:22, 5:8
**schedule** [6] - 6:18, 8:14, 8:16, 8:17, 13:25, 14:7
**scribble** [1] - 6:2
**Secondly** [1] - 4:20
**see** [3] - 4:13, 7:13, 13:17
**seeking** [1] - 9:2, 10:17
**seem** [1] - 9:20
**send** [1] - 12:7
**sense** [2] - 8:21, 9:20
**September** [1] - 10:6
**serious** [1] - 11:24
**set** [1] - 10:20
**settlement** [1] - 13:17
**Shaw** [1] - 11:20
**similar** [2] - 3:21, 5:8
**simply** [1] - 3:3
**Sleet** [1] - 1:13
**slightly** [1] - 3:22
**Solicitor** [1] - 3:25, 4:2, 7:13, 8:1, 8:5, 8:11, 14:13
**somewhere** [1] - 5:23

**sort** [2] - 2:16
**sought** [3] - 7:24, 7:25, 8:1
**sources** [1] - 11:20
**spacing** [1] - 9:10
**specific** [2] - 8:21, 8:25
**specifically** [1] - 6:13
**staff** [1] - 10:25
**stakes** [1] - 11:25
**stand** [1] - 4:17
**States** [1] - 1:1
**status** [5] - 2:14, 2:17, 6:1, 8:15, 8:22
**status/daubert** [1] - 9:6
**stay** [1] - 13:15
**still** [1] - 13:1
**strikes** [1] - 13:3
**strokes** [1] - 11:7
**subject** [1] - 5:11
**Subject** [1] - 3:8
**submission** [1] - 14:5
**submit** [3] - 3:11, 8:6
**submitted** [1] - 8:2
**sue** [5] - 3:1, 5:9, 5:13, 6:13, 6:14
**sued** [1] - 5:12
**suggestions** [1] - 8:24
**summary** [3] - 9:3, 10:18
**Super** [4] - 2:18, 3:18, 4:22, 6:8
**Supreme** [5] - 3:23, 3:25, 4:4, 4:6, 4:13, 7:11, 7:12, 8:1, 8:8
**swear** [1] - 5:23
**system** [1] - 2:13

## T

**tact** [1] - 12:4
**teleconference** [1] - 9:1
**telephone** [1] - 11:5
**terms** [2] - 6:4, 12:25
**Teva** [2] - 5:7, 5:15
**therefore** [1] - 3:6
**Third** [1] - 11:16
**three** [5] - 10:23, 11:11, 11:15, 12:5, 12:11
**tight** [1] - 12:25
**today** [1] - 2:6
**transcript** [1] - 6:16
**trial** [5] - 9:12, 9:17,

**trigger** [1] - 4:24
**trip** [2] - 2:10, 13:11
**try** [2] - 7:15, 13:6
**trying** [1] - 13:10
**Tuesday** [3] - 1:10, 6:24, 14:7
**Tunnell** [1] - 1:16
**Two** [1] - 4:16
**two** [2] - 5:17, 11:4
**type** [2] - 3:1, 5:12

## U

**unconditional** [1] - 3:1
**under** [4] - 3:21, 6:20, 9:18, 14:12
**United** [1] - 1:1
**up** [3] - 2:16, 2:17, 13:25
**Usdcj** [1] - 1:13
**utilizing** [1] - 9:8

## V

**Visit** [1] - 13:12

## W

**waiting** [1] - 3:3
**waive** [1] - 13:1
**Walker** [1] - 6:1
**Walsh** [17] - 1:19, 2:7, 2:8, 3:5, 3:13, 4:22, 5:22, 6:10, 7:23, 7:25, 8:4, 8:10, 9:3, 11:11, 13:11, 13:11, 13:21
**wants** [3] - 3:6, 7:16
**waste** [1] - 13:4
**Watson** [9] - 3:2, 3:14, 3:17, 4:9, 4:17, 4:18, 6:6, 6:13, 7:10
**waxman** [3] - 3:19, 4:21, 4:23, 6:7
**website** [1] - 12:22
**week** [2] - 3:10, 6:22
**weeks** [1] - 7:5
**Welcome** [1] - 13:14
**Welsh** [2] - 1:20, 2:7
**Wilmington** [2] - 1:10, 13:12
**wooden** [1] - 12:6
**word** [2] - 4:19, 4:20
**worthwhile** [1] - 13:11
**write** [1] - 11:9

**year** [2] - 4:7, 10:13
**yesterday** [1] - 2:18

EXHIBIT E

# WEIL, GOTSHAL & MANGES LLP

## FAX COVER PAGE

700 Louisiana, Suite 1600, Houston, TX 77002

Main Phone: (713) 546-5000
Main Fax: (713) 224-9511
Telex: 462014

**TOTAL PAGES:** **4**

(including this page)

**DATE:** August 8, 2006

**PLEASE SEND:**
☐ IMMEDIATELY  ☑ ASAP
**SENDER'S DIRECT DIAL:**
713-546-5062

**FROM:** Jason Abair

**EMAIL:** Jason.abair@weil.com

| PLEASE DELIVER TO: | FAX NUMBER: | PHONE NUMBER: |
|---|---|---|
| 1. Robert B. Breisblatt | 312-655-1501 | 312-655-1500 |

**COMMENTS:**

**If you do not receive legible copies of all pages, please contact the Telecopy Department at (713) 546-5153 or the Sender.**

**ATTY. NO.:** 4388     **CLIENT/MATTER NO.:** 62961.0007     **ROOM NO.:**     **PREPARED BY:** Karen Lancaster

**TRANSMITTED BY:** _____     **DATE:** 8/9     **COMPLETED TIME:** 4:34     ☐ AM  ☑ PM

**REFERENCE #**
_____

**TO**



**RECEIVED**

This facsimile message is intended only for use of the individual or entity name above, and may contain confidential and/or legally privileged information. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone, and return the original message to us at the above address via the postal service. Thank You.

# WEIL, GOTSHAL & MANGES LLP

700 LOUISIANA

SUITE 1600

HOUSTON, TEXAS 77002

(713) 546-5000

FAX: (713) 224-9511

AUSTIN
BOSTON
BRUSSELS
BUDAPEST
DALLAS
FRANKFURT
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
SHANGHAI
SILICON VALLEY
SINGAPORE
WARSAW
WASHINGTON, D.C.

WRITER'S DIRECT LINE

*(713) 546-5062*
jason.abair@weil.com

August 8, 2006

Robert B. Breisblatt, Esq.
Welsh & Katz, Ltd.
120 South Riverside Plaza, 22nd Floor
Chicago, IL  60606-3912

Re:  *Merck & Co., Inc. v. Apotex, Inc.*, C.A. No. 06-230 (GMS) (D.Del.)

Dear Bob:

I have attached a proposed order of dismissal for the above-referenced case.  Please let us know by the close of business Thursday, August 10, 2006, whether Apotex agrees to the proposed order.  If Apotex disagrees, please explain Apotex's position.

Please contact us should you have any questions.

Sincerely,

Jason C. Abair

JA/kl

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MERCK & CO., INC.<br><br>        Plaintiff,<br><br>    v.<br><br>APOTEX, INC.,<br><br>        Defendant. | C.A. No. 06-230 (GMS) |

## [PROPOSED] ORDER OF DISMISSAL OF MERCK'S COMPLAINT
## FOR PATENT INFRINGEMENT AGAINST APOTEX, INC.

WHEREAS, Merck & Co., Inc. ("Merck") and Defendant Apotex, Inc. ("Apotex") agree as follows and seek the dismissal of Merck's Complaint and of all Counterclaims in Apotex's Answer, Affirmative Defenses, and Counterclaims filed in Civil Action No. 06 CV 230 under the conditions reflected in this Order.

WHEREAS, Apotex produced to Merck on May 5, 2006, portions of Abbreviated New Drug Application ("ANDA") No. 077-982 as pages numbered AM00001 – AM00303.

WHEREAS, Merck has unconditionally represented, stipulated, agreed, and covenanted not to sue Apotex or otherwise hold it liable for infringement of any and all claims of Merck's U.S. Patent Nos. 5,358,941; 5,681,590; 5,849,726; 6,008,207; 6,090,410; 6,194,004; 5,994,329; 6,015,801; and 6,225,294 based on: (1) the filing of Apotex's ANDA No. 077-982, portions of which were produced to Merck on May 5, 2006, as pages numbered AM00001 – AM00303; or 2) Apotex's manufacture, use, distribution, sale, offer to sell, or importation into the United States

1

of drug products that are the subject of Apotex's ANDA No. 077-982, portions of which were produced to Merck on May 5, 2006, as pages numbered AM00001 – AM00303

THEREFORE, it is ORDERED that:

1.    All claims of Merck's Complaint be DISMISSED with prejudice.

2.    All counterclaims of Apotex's Answer, Affirmative Defenses and Counterclaims be DISMISSED for lack of subject matter jurisdiction; and

3.    Each party shall bear its own costs, attorneys' fees, and expenses incurred in connection with the Claims and Counterclaims dismissed by this Order.

SO ORDERED this _____ day of _____, 2006.

_____
U.S.D.J.

EXHIBIT F

# *WELSH & KATZ, LTD.*

*120 South Riverside Plaza, Suite 2200*
*Chicago, Illinois 60606*
*(312) 655-1500*
*Fax: (312) 655-1501*

## FAX TRANSMISSION COVER SHEET

**Date:**    *August 10, 2006*

**To:**    *Jason C. Abair, Esq.*
    *Weil, Gotshal & Manges LLP*

**Fax:**    *(713) 224-9511*

**Re:**    *Merck v. Apotex, C.A. No. 06-230*
    *Our File No. 8898/97290*

**Sender:**    *Robert B. Breisblatt*

*YOU SHOULD RECEIVE 2 PAGE(S), INCLUDING THIS COVER SHEET.*
*IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (312) 655-1500*
*AND ASK FOR Carol Hoefler.*

COMMENTS:

The documents accompanying this facsimile contain information which may be confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you have received this facsimile in error, please notify us by collect telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you.

# WELSH & KATZ, LTD.

*Attorneys at Law*

120 SOUTH RIVERSIDE PLAZA · 22ND FLOOR
CHICAGO, ILLINOIS 60606-3912

TELEPHONE (312) 655-1500
FACSIMILE (312) 655-1501

www.welshkatz.com

A. SIDNEY KATZ*
RICHARD L. WOOD*
JEROLD B. SCHNAYER
JOSEPH R. MARCUS
GERALD S. SCHUR
GERALD T. SHEKLETON
JAMES A. SCHEER
DANIEL R. CHERRY
ROBERT B. BREISBLATT
JAMES P. WHITE
R. MARK HALLIGAN
HARTWELL P. MORSE, III
EDWARD P. GAMSON, PH.D.
KATHLEEN A. RHEINTGEN
THOMAS W. TOLPIN*
RICHARD W. McLAREN, JR.
ELLIOTT C. BANKENDORF
ERIC D. COHEN
JOHN L. AMBROGI
JULIE A. KATZ
JON P. CHRISTENSEN
WALTER J. KAWULA, JR.
LEONARD FRIEDMAN
STEVEN E. FELDMAN
JEFFREY W. SALMON
LOUISE T. WALSH
PAUL M. VARGO, PH.D.
JOSEPH E. CWIK

J. ARON CARNAHAN
ERIK B. FLOM, PH.D.
JAMES B. RADEN

RICHARD J. GURAK
DANIEL M. GURFINKEL
MICHELE S. KATZ*
BRIAN J. SODIKOFF
BRETT M. TOLPIN
GEORGE S. PAVLIK
MICHAEL A. KROL, PH.D.
SHERRY L. ROLLO
CRAIG M. KUCHII
STEPHEN P. BENSON
GREGORY J. SKONY

OF COUNSEL
LAURIE A. HAYNIE
JAMES J. MYRICK
THOMAS R. VIGIL
PHILIP D. SEGREST, JR.**
WALLACE L. OLIVER, PH.D.
LAURA A. LABEOTS, PH.D.

DONALD L. WELSH (1925-1998)

* ALSO ADMITTED IN DISTRICT OF COLUMBIA
** ALSO ADMITTED IN ALABAMA

Writer's direct dial: (312) 526-1510
Writer's direct fax: (312) 655-0008
Writer's E-Mail: rbbreisblatt@welshkatz.com

August 10, 2006

**_Via Facsimile (713/224-9511) & U.S. Mail_**
Jason C. Abair, Esq.
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, TX  77002

> Re:  *Merck v. Apotex, C.A. No. 06-230*
>      *Our File No. 8898/97290*

Dear Jason:

I have received your letter of August 8, 2006 and your [Proposed] Order of Dismissal.
Apotex finds the proposed Order unacceptable.

Very truly yours,

WELSH & KATZ, LTD.

By:  *Robert B. Breisblatt*
     Robert B. Breisblatt

RBB:ch
cc:  A. Sidney Katz
     Louise T. Walsh