IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-230 (GMS) |
| | ) | |
| APOTEX, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MERCK'S MOTION TO STAY FURTHER PROCEEDINGS
PENDING RESOLUTION OF ITS MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

Merck & Co., Inc. ("Merck") hereby moves for an order staying further proceedings, both as to discovery and the "merits" of the counterclaims of noninfringement and invalidity by Apotex, Inc. ("Apotex"), in light of Merck's pending motion to dismiss for lack of subject matter jurisdiction based on the covenant not to sue Merck has given Apotex. (D.I. 15).[1]  The remaining discovery sought by Apotex prejudices Merck and would unduly burden individuals, if allowed to proceed.   Apotex is attempting to alter the landscape of the case and to use discovery to bolster its position that subject matter jurisdiction exists by creating the appearance of a justiciable controversy when none exists.   No justiciable controversy exists because, regardless of the outcome of Merck's motion to dismiss, Merck cannot and will not assert a claim of infringement against Apotex's product that is the subject of its ANDA.

---

[1]  Merck filed a motion on February 1, 2007 captioned as a motion to stay discovery, which it then withdrew the next day.   Because Merck is seeking not only a stay of discovery pending a ruling on jurisdiction but also a stay of all proceedings, including on the "merits" of Apotex's counterclaims of noninfringement and invalidity, Merck is filing its present motion.

Moreover, if proceedings relating to summary judgment go forward as scheduled in May, Merck (and the Court) will be drawn into whatever substantive issues of invalidity and noninfringement Apotex raises at that time, and Merck could be forced to defend its patents against Apotex's challenge, even though the Court may decide, if it agrees with Merck, that there is no case or controversy over Merck's patents.   Yet as noted by Judge Latchum, "this Court cannot consider the merits of the case until it first is assured of its jurisdiction."   *Conoco, Inc. v. Skinner*, 1991 WL 317019 (D. Del. 1991), citing *Allied Poultry Processors Co. v. Polin,* 134 F. Supp. 278, 279 (D. Del. 1955) for the proposition that "jurisdiction must be secured before a court proceeds with other substantive contentions."   Accordingly, the Court in *Conoco* granted a stay of summary judgment proceedings pending a ruling on a motion to dismiss because it was "appropriate to promote fair and efficient adjudication."   *Conoco*, *supra.*   Merck submits that, as in *Conoco*, a stay pending a ruling on its motion to dismiss is likewise warranted.

## **BACKGROUND**

This patent infringement action was filed based on Apotex's submission of an Abbreviated New Drug Application ("ANDA") seeking to market a generic version of Merck's FOSAMAX® tablets.   Apotex sent a "Paragraph IV" letter to Merck dated February 24, 2006, which notified Merck that Apotex had filed ANDA No. 077-982, and that Apotex intended to market its generic tablets before the expiration of nine Merck patents listed for FOSAMAX® tablets in the FDA's Orange Book.[2]   Apotex's letter stated that its ANDA certified that Merck's patents are invalid, unenforceable and/or will not be infringed by the commercial manufacture, use, or sale of Apotex's generic copy.

---

[2]    These nine patents are U.S. Patent Nos. 5,358,941; 5,681,590; 5,849,726; 6,008,207; 6,090,410; 6,194,004; 5,994,329; 6,015,801; and 6,225,294.

The Hatch-Waxman Act contemplates that an innovator pharmaceutical company, in this case Merck, may request information from the ANDA filer seeking to sell copies of the innovator's drug, here Apotex.   21 U.S.C.A. 355(j)(5)(C)(i)(III).   The reason for this approach is to allow the innovator to evaluate whether to file suit against the ANDA filer.   Encouraging the provision of such information so as to avoid unnecessary lawsuits, the statute requires the innovator to keep the ANDA information confidential.  *Id.*   Apotex's letter did not provide information that would have allowed Merck to evaluate whether to file an infringement action, and so Merck twice sought information from Apotex before filing this lawsuit.   (D.I. 38 at n.1 & Exs. B-D.)   Essentially ignoring both letters, Apotex provided nothing.

In view of Apotex's failure to provide information from its ANDA, Merck had a right to file this patent infringement action to protect Merck's rights under the Hatch-Waxman Act, which it did on April 7, 2006.[3]   *Hoffman-La Roche, Inc. v. Invamed, Inc.,* 213 F.3d 1359, 1363-1364 (Fed. Cir. 2000).   The Federal Circuit explained in *Hoffman-La Roche* that a defendant's refusal to provide necessary information for an infringement analysis in response to pre-suit inquiries following an ANDA certification letter provides a proper Rule 11 basis for an infringement action brought by the patentee.   Notably, the defendant/appellant in *Hoffman-La Roche* who refused to provide information and subsequently contested the filing of the lawsuit was Torpharm, an affiliate of Apotex.

---

[3]   Merck had 45 days from receipt of Apotex's paragraph IV letter to file suit for Apotex's infringement.   Had Merck failed to file suit within that period, the FDA would have been permitted to approve Apotex's ANDA once all FDA exclusivities of other generics expired and the FDA determined that the proposed generic was the bioequivalent of the approved drug and was otherwise approvable.   *See* 35 U.S.C. § 355(j)(5)(B)(iii).   Apotex apparently has determined as a business strategy that it will induce litigation to get around Hatch-Waxman restrictions on FDA approval by certifying under Paragraph IV and then failing to provide requested information so as to induce a lawsuit (as here and in *Hoffman-La Roche*) and by then pursuing the litigation when there is a covenant not to sue.   It even now has sued one innovator despite a covenant not to sue (see pp. 10-11, *infra*).

On May 9, 2006, Apotex answered the complaint by denying the infringement allegations and asserting a counterclaim seeking a declaration of invalidity and noninfringement of the nine patents (D.I. 8).   All pleadings were filed by May 30, 2006 (D.I. 11).

After Merck filed suit, Apotex finally provided to Merck confidential excerpts of Apotex's ANDA.   After reviewing these excerpts, Merck notified Apotex in early July 2006 that it would grant Apotex a covenant not to sue on all claims of the patents in suit.   Merck forwarded to Apotex the covenant not to sue on August 7, 2006.   Merck has always told Apotex that it would address any legitimate concerns by revising the covenant not to sue.

At the scheduling conference with this Court on August 8, 2006, Apotex indicated that it would contest dismissal.   Following the scheduling conference, Merck sent a proposed order of dismissal to Apotex, and invited Apotex to explain any disagreement.   Apotex responded that the proposed order was "unacceptable," but failed to explain its position. (August 10, 2006 letter from Robert Briesblatt to Jason Abair, attached as Exhibit A.)

Merck filed a motion to dismiss for lack of subject matter jurisdiction on August 16, 2006, based on the covenant not to sue.   Merck's pending motion to dismiss, which has been fully briefed, is case dispositive.[4]   Absent any threat of harm from Merck, there is no justiciable controversy.   Under Article III of the Constitution, only actual cases or controversies in which a party has suffered or is threatened with actual injury caused by the other party are to be adjudicated.   *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).   In this case,

---

[4]     *Super Sack v. Chase*, 57 F.3d 1054 (Fed. Cir. 1995) (Although defendant "may have some cause to fear an infringement suit under the [patents in suit] based on products that it may develop in the future," there is no subject matter jurisdiction over defendant's counterclaims where plaintiff's covenant not to sue removed any "cause for concern that [defendant] can be held liable for any infringing acts involving products that it made, sold, or used on or before [the date of any covenant not to sue].").

Apotex has suffered no harm and is under no threat of harm from the claims of Merck's patents. Even if any "harm" could be conjured up, it would not be attributable to Merck.

In November 2006, the Court required Merck to respond more fully to Apotex's written discovery (seeking Merck's contentions on infringement) on the ground that Merck's responses which gave no contentions were inadequate and that Merck had received more "specific information" from Apotex about its ANDA after filing the suit.   (Transcript of 11/3/06 teleconference at 21-22.)   Merck supplemented its responses and provided all the specific information it had.   Merck has no other existing information to provide in response to Apotex's contention interrogatories (both the ones at issue in November and additional recent ones asking for further specifics on Merck's infringement positions).

Now Apotex is seeking by way of interrogatories to force Merck to *develop* positions on infringement that it does not presently have in case the lawsuit is not ultimately dismissed.   Yet in light of the covenant not to sue, Merck cannot and will not assert any of the claims of the patents in suit against Apotex in connection with Apotex's ANDA product, even if the Court were to deny Merck's motion to dismiss.   Thus, Apotex is seeking to prejudice Merck by forcing Merck to take affirmative positions (despite the fact that Merck cannot take such positions given its covenant not to sue) on infringement so that Apotex can turn these forced positions into support for the proposition that a case or controversy exists between the parties.

Apotex is also now seeking to depose the 10 inventors of the patents in suit before the fact discovery cutoff of February 20, 2007.   The majority of these witnesses are actively engaged in the research and development of other pharmaceuticals, and some of them are no longer employed by Merck.   One of the inventors is now a retiree in poor health.   Merck submits that Apotex should not be able to place the burden of depositions on these individuals,

pending a decision on Merck's motion to dismiss.   If the Court holds that Merck is correct, the depositions would be altogether unnecessary.   Additionally, several of the witnesses have previously been deposed, and Merck has offered to make their transcripts available to Apotex.

Following the close of expert discovery, proceedings relating to summary judgment are set to begin on May 9, 2007.   At that time, Merck will likely be drawn further into substantive issues relating to its patents, as Apotex can be expected to seek to file one or more summary judgment motions on the merits of its claims of noninfringement and invalidity. Indeed, Apotex's most recent discovery appears directed to issues that could relate to validity (although its certification letter does not give details of any invalidity defense).

Under these circumstances, there is no good reason to undertake further proceedings at this time.   Fact and expert discovery are set to close on February 20 and April 5, 2007, respectively.   Summary judgment letter briefing (on whether to allow such motions) is set to begin May 9, 2007, with trial beginning December 10, 2007.   It does not make sense to go forward with proceedings on the merits of Apotex's counterclaims and consider possible summary judgment, when those proceedings not only will have nothing to do with the issue of subject matter jurisdiction raised by Merck's pending motion to dismiss, but necessarily presume that subject matter jurisdiction exists to decide the merits.

Apotex will not be prejudiced by a delay while the Court decides jurisdiction. Apotex has already received substantial discovery.   Merck has supplemented its answers to interrogatories with more specific information as the Court ordered and Merck does not have additional contentions or information to provide in response to any of Apotex's interrogatories. Merck cannot and will not assert any claims of the patents in suit against Apotex's ANDA

product (Merck is willing to be held to its interrogatory responses as served which do not assert any claims against Apotex).   Merck is producing the documents Apotex has requested.[5]

The only remaining discovery Apotex could possibly assert a need for would be the witness testimony which it just recently has begun to seek, and Apotex has yet to review the prior deposition transcripts to determine if it even needs further testimony.   Merck asserts that there is no need for additional testimony, but in the event further testimony were ultimately required, there is no reason that it could not readily be completed after the Court's ruling, if the Court denied Merck's motion, and no reason the Court could not hold trial on the current schedule.   Indeed, Apotex evidently believes that only two weeks is needed for it to depose witnesses, as it waited until now even to seek any depositions, so there can be no claim by Apotex that those depositions are a time consuming obstacle to a prompt trial.

## <u>ARGUMENT</u>

### A.    A Stay Is Proper Given Merck's Covenant Not To Sue And The Lack Of Prejudice To Apotex

The "power to stay proceedings, so as to promote fair and efficient adjudication, is incidental to the Court's inherent power to control the disposition of the cases on its docket." *Conoco*, *supra*, 1991 WL 317019.   "When determining whether a stay is appropriate, the Court should balance the competing interests, consider the possible damage, hardship, and inequities and conserve judicial resources."   *Id.*   It "is desirable that jurisdiction questions be determined promptly to the end that long and costly trials may be avoided or restricted to the pertinent and material issues."   *Underwood v. Maloney*, 256 F.2d 334, 340 (3rd Cir. 1958), *cert. denied,* 358 U.S. 864 (1958).   This Court determined in *Conoco* that a stay of proceedings directed to

---

[5]    Apotex only served its document requests on December 29, 2006.   Merck promptly searched for and collected documents and then responded on January 29, 2007.   Those documents are available for Apotex's inspection and copying.

discussion of the merits in connection with summary judgment proceedings pending resolution of a question of subject matter jurisdiction was warranted where the merits issues were separate and distinct from subject matter jurisdiction, particularly given that there was no prejudice from a stay to the nonmoving party.    *Id.*    In the present case, as in *Conoco,* any issues raised by Apotex's counterclaims of noninfringement and invalidity have nothing to do with whether there is a justiciable controversy in the face of Merck's covenant not to sue.    At the same time, Merck is prejudiced by having to defend its patents, and to take positions on infringement, when it cannot and will not pursue claims of infringement against Apotex in connection with the product of its ANDA, while Apotex will not be prejudiced by a stay.    Hence, a stay of summary judgment proceedings is, if anything, more warranted here than in *Conoco.*

Moreover, "it is within the sound discretion of the Court to postpone merits discovery pending resolution of potentially dispositive motions."    *Coastal States Gas Corp. v. Dept. of Energy*, 84 F.R.D. 278, 282 (D. Del. 1979); Fed. R. Civ. P. 26.    A trial court has "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."    *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) (citations omitted).    A stay of discovery pending the determination of a dispositive motion is "an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources."    *Coastal States Gas Corp.*, 84 F.R.D. at 282.    When there are no facts pertaining to the issue of jurisdiction remaining to be discovered, a court has "no right or prerogative to do other than to decide the question [of jurisdiction]."    *Id.*

Merck's motion to dismiss based on subject matter jurisdiction has been fully briefed.    In this case, there are no "factual issues raised by the motion."    *Canavan v. Beneficial Finance Corp.*, 553 F.2d 860 (3d Cir. 1977) (holding that both parties should be allowed

discovery on factual issues raised by the motion). Merck's grant of a covenant not to sue removes any justiciable controversy and assures that Apotex could never be held liable for infringement of the patents in suit based on its ANDA. As the motion to dismiss sets out, this action, including Apotex's counterclaim, is moot – depriving the Court of subject matter jurisdiction. *See Super Sack v. Chase*, 57 F.3d 1054 (Fed. Cir. 1995).

Apotex's remaining discovery would place a burden on individuals to give depositions and on Merck, when it has given a covenant not to sue that should avoid its incurring the burden and expense of discovery. A party's interest in avoiding just such potentially unnecessary costs and burdens is an important one to take into account where jurisdiction has been contested and is reason to decide subject matter jurisdiction before burdensome discovery is permitted. *See U.S. v Boe*, 543 F.2d 151, 160 (C.C.P.A. 1976).

The trial court "inevitably must balance the harm produced by a delay in discovery against the possibility that [a dispositive] motion will be granted and entirely eliminate the need for such discovery." *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 3 (D.D.C. 2001) (citations omitted). Here, the potential prejudice to Apotex would be minimal, if any, compared to the preservation of Court and party resources. There is ample time before the presently scheduled trial starting December 10 to allow Apotex later to take depositions, if the Court were to deny Merck's motion to dismiss and if Apotex actually later believed it needed additional testimony.

On the other hand, depositions will be costly for Merck and burdensome for its current and former employees. Any additional discovery will be prejudicial to Merck where Apotex is seeking to force Merck to take positions it cannot and will not have in this litigation, simply to paint the appearance of a case or controversy where none exists. As no discovery is

needed to address the issue of subject matter jurisdiction, it is unnecessary and wasteful to subject the Court and parties "to a present expenditure of time and effort . . . when such disclosure may not be necessary."  *Klien v. Lionel Corp.*, 18 F.R.D. 186, 187 (D. Del. 1955); *See also Jarvis v. Regan*, 833 F.2d 149, 154 (9th Cir. 1987) (granting stay because discovery was "not required to address the issues raised in defendants' motion to dismiss").

    **B.**    **Apotex Has Engaged In A Pattern Of Gaming Consistent With Its Attempt To Oppose The Dismissal Of This Case Despite The Lack Of A Case Or Controversy Between The Parties**

       Apotex is using this lawsuit as part of an evident scheme before this and other courts to try to circumvent the Hatch-Waxman Act, with its careful balancing of many interests, and thus prematurely market its products.  Notably, on January 24, 2007, Apotex filed a declaratory judgment action against another innovator pharmaceutical company, Glaxo, in connection with an ANDA.

       There, Glaxo had not sued within 45 days of receiving notice of the ANDA filing and had not requested any confidential information from Apotex.  Apotex nonetheless filed a declaratory judgment action against Glaxo.  (*Apotex v. Glaxo* Complaint attached as Exhibit B.) Significantly, Apotex claimed in its complaint that:

       68.    On information and belief, Glaxo still intends to assert the '249 patent against Apotex, putting Apotex at risk of potentially catastrophic infringement damages.

       69.    To date, Glaxo has never stated or represented that Apotex does not infringe the '249 patent, *or otherwise provided Apotex with a covenant-not-to-sue* to that patent.   (Emphasis added.)

Thus, by implication, Apotex has acknowledged that a covenant not to sue, as Merck has given here, in fact removes the risk of infringement liability.  Apotex's gamesmanship in that suit parallels this case as Apotex is again seeking to encroach upon the statutorily imposed 180-day exclusivity period of the first ANDA filer.  *Id.* at 17 (¶80).  Apotex always neglects to inform

the Courts that in its attempt to attack another generic's 180-day exclusivity period (which is imposed by statute, enforced by the FDA and controls the relative rights among ANDA filers), it has failed. *Apotex, Inc. v. FDA*, 449 F.3d 1249 (D.C. Cir. 2006). In *Apotex v. FDA*, the D.C. Circuit Court of Appeals explained that the Hatch-Waxman Act does not entitle Apotex to a "triggering" event against another generic's 180-day exclusivity. *Id*. at 1253. In fact, in that case Apotex conceded that "no generic manufacturer can maintain an action against a patent holder who has promised never to sue for infringement." *Id*.

Apotex's scheme to prematurely reach the market with its generic copies has even lead it to willfully violate a district court injunction against it. *Abbott Labs v. Apotex, Inc.*, 455 F. Supp.2d 831 (N.D. Ill. 2006). This past October, the United States District Court for the Northern District of Illinois held that Apotex's principal, Dr. Bernard Sherman, had acted with "seeming indifference to patent law" and that Apotex had engaged in contumacious conduct in violating the court's injunction when it prematurely sought to market its product using a guise of affiliated companies. *Id.* at 836, 837, 839.

Under these circumstances, the individuals who will be impacted, Merck, and this Court, should not be burdened by further proceedings pending the outcome of Merck's motion to dismiss and a determination of subject matter jurisdiction.

## CONCLUSION

Accordingly, Merck respectfully requests that the Court stay further proceedings pending the outcome of Merck's dispositive motion to dismiss for lack of subject matter jurisdiction (form of order attached as Exhibit C). Merck also requests oral argument on this motion to stay and on its motion to dismiss.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
James W. Parrett, Jr. (#4292)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
302.658.9200

*Attorneys for Merck & Co., Inc.*

OF COUNSEL:

John F. Lynch
HOWREY, LLP
1111 Louisiana, 25th Floor
Houston, TX   77002-5242
650.463.8100

Nicolas G. Barzoukas
Suzy S. Harbison
Jason C. Abair
WEIL, GOTSHAL & MANGES
700 Louisiana, Suite 1600
Houston, TX   77002
713.546.5000

Paul D. Matukaitis
MERCK & CO., INC.
One Merck Drive, WS3B-70A
Whitehouse Station, NJ   08889-0100
908.423.3761

Edward W. Murray
Gerard M. Devlin
MERCK & CO., INC.
126 E. Lincoln Avenue RY28-320
Rahway, NJ   07065-0907
732.594.4000

Dated:    February 5, 2007
724394

### CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2007, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Wilmington, DE  19899

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 5, 2007 upon the following individuals in the manner indicated:

| BY E-MAIL AND HAND DELIVERY | BY E-MAIL |
|---|---|
| Richard L. Horwitz, Esquire | Louise Walsh, Esquire |
| POTTER ANDERSON & CORROON LLP | WELSH & KATZ, LTD. |
| Hercules Plaza, 6th Floor | 120 South Riverside Plaza; 22nd Floor |
| 1313 North Market Street | Chicago, IL  60606 |
| Wilmington, DE  19899 | |

*/s/ Mary B. Graham*
_____
Mary B. Graham (#2256)

Exhibit A

# *WELSH & KATZ, LTD.*

*120 South Riverside Plaza, Suite 2200*
*Chicago, Illinois 60606*
*(312) 655-1500*
*Fax: (312) 655-1501*

## FAX TRANSMISSION COVER SHEET

**Date:**    *August 10, 2006*

**To:**      *Jason C. Abair, Esq.*
            **Weil, Gotshal & Manges LLP**

**Fax:**     *(713) 224-9511*

**Re:**      *Merck v. Apotex, C.A. No. 06-230*
            *Our File No. 8898/97290*

**Sender:**  *Robert B. Breisblatt*

---

*YOU SHOULD RECEIVE 2 PAGE(S), INCLUDING THIS COVER SHEET.*
*IF YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (312) 655-1500*
*AND ASK FOR Carol Hoefler.*

---

COMMENTS:

The documents accompanying this facsimile contain information which may be confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the individual or entity named on this transmission sheet. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you have received this facsimile in error, please notify us by collect telephone immediately so that we can arrange for the retrieval of the original documents at no cost to you.

# WELSH & KATZ, LTD.

*Attorneys at Law*

A. SIDNEY KATZ*
RICHARD L. WOOD*
JEROLD B. SCHNAYER
JOSEPH R. MARCUS
GERALD S. SCHUR
GERALD T. SHEKLETON
JAMES A. SCHEER
DANIEL R. CHERRY
ROBERT B. BREISBLATT
JAMES P. WHITE
R. MARK HALLIGAN
HARTWELL P. MORSE, III
EDWARD P. GAMSON, Ph.D.
KATHLEEN A. RHEINTGEN
THOMAS W. TOLPIN*
RICHARD W. McLAREN, JR.
ELLIOTT C. BANKENDORF
ERIC D. COHEN
JOHN L. AMBROGI
JULIE A. KATZ
JON P. CHRISTENSEN
WALTER J. KAWULA, JR.
LEONARD FRIEDMAN
STEVEN E. FELDMAN
JEFFREY W. SALMON
LOUISE T. WALSH
PAUL M. VARGO, Ph.D.
JOSEPH E. CWIK

J. ARON CARNAHAN
ERIK B. FLOM, Ph.D.
JAMES B. RADEN

RICHARD J. GURAK
DANIEL M. GURFINKEL
MICHELE S. KATZ*
BRIAN J. SODIKOFF
BRETT M. TOLPIN
GEORGE S. PAVLIK
MICHAEL A. KROL, Ph.D.
SHERRY L. ROLLO
CRAIG M. KUCHII
STEPHEN P. BENSON
GREGORY J. SKONY

OF COUNSEL
LAURIE A. HAYNIE
JAMES J. MYRICK
THOMAS R. VIGIL
PHILIP D. SEGREST, JR.*
WALLACE L. OLIVER, Ph.D.
LAURA A. LABEOTS, Ph.D.

DONALD L. WELSH (1925-1998)

* ALSO ADMITTED IN DISTRICT OF COLUMBIA
** ALSO ADMITTED IN ALABAMA

120 SOUTH RIVERSIDE PLAZA · 22ND FLOOR
CHICAGO, ILLINOIS 60606-3912

TELEPHONE (312) 655-1500
FACSIMILE (312) 655-1501

www.welshkatz.com

Writer's direct dial: (312) 526-1510
Writer's direct fax: (312) 655-0008
Writer's E-Mail: rbbreisblatt@welshkatz.com

August 10, 2006

**_Via Facsimile (713/224-9511) & U.S. Mail_**
Jason C. Abair, Esq.
Weil, Gotshal & Manges LLP
700 Louisiana, Suite 1600
Houston, TX 77002

> *Re:* *Merck v. Apotex, C.A. No. 06-230*
> *Our File No. 8898/97290*

Dear Jason:

I have received your letter of August 8, 2006 and your [Proposed] Order of Dismissal.
Apotex finds the proposed Order unacceptable.

Very truly yours,

WELSH & KATZ, LTD.

By: *Robert B. Breisblatt*
Robert B. Breisblatt

RBB:ch
cc: A. Sidney Katz
Louise T. Walsh

EXHIBIT B

FILED

JAN 2 4 2007

_10 03 a m_

CLERK, US DISTRICT COURT
NORFOLK, VA

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

APOTEX, INC.                          )
                                      )
            Plaintiff,                )
                                      )
       v.                             )    Civil Action No. 2:07cv 40 _vpst_
                                      )
GLAXO GROUP LIMITED, d/b/a            )
GLAXOSMITHKLINE,                      )
                                      )
            Defendant.                )

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, Apotex, Inc., for its Complaint against the Defendant, Glaxo Group

Limited ("Glaxo"), d/b/a GlaxoSmithKline, alleges as follows:

### Nature Of The Action

1.    Apotex brings—and is entitled by statute to maintain—this action for

declaratory judgment of patent non-infringement under, _inter alia_, the federal Declaratory

Judgment Act, 28 U.S.C. §§ 2201 and 2202, and 21 U.S.C. § 355(j)(5)(C)(i), which is part of

the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act ("FFDCA"), as

amended by Title XI of the Medicare Prescription Drug, Improvement, and Modernization Act

of 2003, Pub. L. No. 108-173, 117 Stat. 2066 (2003) ("MMA").

2.    This action arises out of, _inter alia_, Apotex's submission of an Abbreviated

New Drug Application ("ANDA") to the U.S. Food and Drug Administration ("FDA") seeking

approval to market a generic version of Glaxo's brand-name anti-ulcer medication Zantac®

Syrup, known generically as ranitidine hydrochloride.

3.    Glaxo purports to own U.S. Patent No. 5,068,249 ("the '249 patent"), a true and

accurate copy of which is attached to this Complaint as Exhibit A. Upon submission by Glaxo,

①

the '249 patent was listed in FDA's so-called "Orange Book," a compilation of approved drugs and their patents. As a consequence of such Orange Book listing, Glaxo maintains, and has affirmatively represented to the world, that the '249 patent claims the approved drug, Zantac® Syrup, or a method of using that drug, and that a claim for patent infringement could reasonably be asserted against any generic ANDA applicant, including Apotex, attempting to market a generic ranitidine product before patent expiration. Moreover, Glaxo already has successfully enforced, and continues to enforce, the '249 patent against other companies seeking to market a generic ranitidine product prior to the expiration of the '249 patent.

4.     Apotex has designed around the '249 patent with its proposed generic ranitidine product and so, as required by statute, has certified to FDA that Apotex's ANDA product will not infringe the '249 patent and has further notified Glaxo of the legal and factual bases for that certification. Apotex's submission of a so-called "paragraph IV" certification to the '249 patent constitutes an artificial act of patent infringement putting Apotex at considerable risk of being sued by Glaxo both before and after market entry. Indeed, this regulatory submission created the necessary case or controversy and subject matter jurisdiction for Glaxo to sue Apotex for patent infringement. It likewise created the necessary case or controversy for Apotex to file and maintain an action for declaratory judgment of patent non-infringement.

5.     Apotex has satisfied all substantive requirements for approval of its ANDA, and is prepared to begin commercial marketing of its competing generic product prior to expiration of the '249 patent. But Apotex's approval has been delayed and Apotex is presently prevented from competing in the ranitidine market by purported generic marketing exclusivity arising out of the '249 patent. Only a declaratory judgment from this Court can alleviate this harm and allow Apotex to obtain approval of its product and compete in the lucrative ranitidine market.

- 2 -

6.      Apotex also faces potentially enormous infringement liability if it markets its generic product prior to expiration of the '249 patent. Only a declaratory judgment from this Court can alleviate this harm and allow Apotex to obtain approval of its product and compete in the lucrative ranitidine market free from infringement liability.

7.      Apotex also reasonably believes and apprehends that Glaxo intends to sue Apotex for infringement of the '249 patent. Glaxo has already obtained a judgment of infringement against one competing ANDA applicant, and is presently suing another.

8.      Accordingly, there is an actual, substantial, and continuing justiciable case and controversy between Apotex and Glaxo regarding the '249 patent, over which this Court can and should exercise jurisdiction and declare the rights of the parties. Apotex is entitled by law to bring and maintain this action for declaratory judgment of patent non-infringement under the Declaratory Judgment Act and the MMA where, as here, Glaxo did not sue Apotex within 45 days of receipt of Apotex's notice of paragraph IV certification to the '249 patent, and Apotex has offered Glaxo an Offer of Confidential Access to Apotex's ANDA for generic ranitidine oral solution.

9.      Apotex is entitled to a judicial declaration that the manufacture, sale, offer for sale, use, or importation of Apotex's proposed generic ranitidine product does not and will not infringe the '249 patent. Absent the exercise of jurisdiction by this Court and such declaratory relief, Apotex and the American public will be irreparably harmed by the indefinite delay in the market entry and availability of lower-priced generic ranitidine.

- 3 -

## The Parties

10.     Plaintiff Apotex, Inc. is a corporation organized and existing under the laws of Canada and having a place of business at 150 Signet Drive, Weston, Ontario, Canada M9L 1T9. Apotex, Inc. develops and manufactures quality, lower-priced generic medicines.

11.     On information and belief, Defendant Glaxo Group Limited ("Glaxo"), doing business as GlaxoSmithKline, is a company organized and existing under the laws of England and Wales and having a registered office at Glaxo Wellcome House, Berkeley Avenue, Greenford, Middlesex, UB6 ONN, Middelesex, England.

## Jurisdiction And Venue

12.     This action arises under, *inter alia*, the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; and the MMA (21 U.S.C. § 355(j)(5)(C)(i) and 35 U.S.C. § 271(e)(5)).

13.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a), because it involves substantial claims arising under the United States Patent Act, 35 U.S.C. §§ 1 *et seq.*; under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, because it is an actual controversy concerning the patent-in-suit; and under the MMA (21 U.S.C. § 355(j)(5)(C)(i) and 35 U.S.C. § 271(e)(5)), because Congress has directed that district courts maintain and exercise jurisdiction in such cases.

14.     There exists a substantial and continuing actual, justiciable case or controversy between Apotex and Glaxo regarding the '249 patent.

15.     This Court can and should declare the rights and legal relations of the parties regarding the '249 patent pursuant to, *inter alia*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and the MMA (21 U.S.C. § 355(j)(5)(C)(i) and 35 U.S.C. § 271(e)(5)).

- 4 -

16.    Apotex has the statutory right to bring and maintain this declaratory judgment action under 21 U.S.C. § 355(j)(5)(C)(i).  This Court can and should exercise its declaratory judgment jurisdiction over Apotex's claims pursuant to 35 U.S.C. § 271(e)(5).

17.    On information and belief, this Court has personal jurisdiction over Glaxo because Glaxo conducts substantial business in, and has regular and systematic contact with, this District.  On information and belief, this Court also has personal jurisdiction over Glaxo because Glaxo has submitted to the jurisdiction of this Court in prior litigation.  On information and belief, this Court also has personal jurisdiction over Glaxo because Glaxo's attorneys and agents that prosecuted the applications leading to the issuance of the patent-in-suit are located within this District.

18.    On information and belief, Glaxo purposefully avails itself of the privilege of doing business as GlaxoSmithKline within the Commonwealth of Virginia and in this District.

19.    On information and belief, Glaxo maintains such a continuous and systematic contact with the Commonwealth of Virginia and this District by conducting substantial, regular and systematic business therein through the marketing and sales of its pharmaceutical products—including Zantac® Syrup, the purported commercial embodiment of the patent-in-suit—to allow this Court to reasonably exercise personal jurisdiction over Glaxo.

20.    Glaxo previously submitted to the jurisdiction of this Court in *Mutual Pharmaceutical Co., Inc. v. Glaxo Group Limited et al.*, No. 03-426, in which Glaxo admitted and conceded that:  (a) Glaxo transacts business within the Commonwealth of Virginia; and, (b) Glaxo maintains such a continuous and systematic contact with the Commonwealth of Virginia and this District by conducting substantial, regular and systematic business therein

through the marketing and sales of its pharmaceutical products to allow this Court to reasonably exercise personal jurisdiction over Glaxo.

21.    Venue is proper in this District under 28 U.S.C. § 1400(b).  Venue is also proper in this District under 28 U.S.C. §§ 1391 because, *inter alia*, Glaxo is subject to personal jurisdiction in this District; and because Glaxo is an alien corporation.

**Background**

## I.    Statutory Scheme For Approval Of New And Generic Drugs.

22.    The approval of new and generic drugs is governed by the applicable provisions of the FFDCA, 21 U.S.C. §§ 301 *et seq.*, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (commonly known as the "Hatch-Waxman Amendments" or "Hatch-Waxman"), and amended again by the MMA (codified as amended in relevant part at 21 U.S.C. § 355 and 35 U.S.C. § 271).

### A.    New drugs and patent listing requirements.

23.    Before marketing an original new drug (*i.e.*, not a generic drug) in the United States, the FFDCA, as amended by Hatch-Waxman and the MMA, requires that an applicant submit, and that FDA approve, a new drug application ("NDA") under 21 U.S.C. § 355(b). The NDA must include, *inter alia*, technical data on the composition of the drug, the means for manufacturing it, clinical trial results to establish the safety and efficacy of the drug, and labeling relating to the use of the drug for which approval is requested.

24.    An NDA applicant is required, within its NDA, to submit information (*e.g.*, the patent number and expiration date) regarding each patent that claims the drug or method of using the drug that is the subject of the NDA and for which a claim of patent infringement could reasonably be asserted if a person not licensed by the patent owner engaged in the manufacture, use, or sale of the drug product. 21 U.S.C. § 355(b)(1); *see also id.* § 355(c)(2).

- 6 -

25.    FDA publishes patent information submitted by an NDA-holder in the Patent and Exclusivity Information Addendum of FDA's publication, *Approved Drug Products with Therapeutic Equivalence Evaluations* (commonly known as the "Orange Book").

26.    By filing an NDA and submitting a patent for listing in the Orange Book, the NDA-holder/patent owner, by law, necessarily maintains that the listed patent claims the approved NDA drug, or a method of using that drug, and that an infringement suit could reasonably be asserted against anyone who engages in the manufacture, use, or sale of the drug, and, in particular, against any company that is seeking to make a generic bioequivalent of the NDA drug before patent expiration.

27.    Thus, the NDA-holder/patent owner necessarily puts all prospective generic ANDA applicants on notice that a suit for infringement can and will be asserted against any ANDA applicant that attempts to seek approval for and market a generic version of the NDA drug before patent expiration.

28.    Such conduct by the NDA-holder/patent owner gives rise to a reasonable apprehension on the generic applicant's part that it will face an infringement suit, or the threat of one, if it attempts to seek approval for or to market a generic version of the NDA drug before patent expiration.

**B.    Generic drugs and patent certification requirements.**

29.    The FFDCA, as amended by Hatch-Waxman and the MMA, provides for an ANDA approval process that enables generic pharmaceutical manufacturers to obtain regulatory approval of lower-cost generic versions of previously approved brand-name or NDA drugs on an expedited basis, thereby benefiting the U.S. health-care system and American consumers. The ANDA process is a streamlined version of the full NDA procedure and results

in a generic drug product that is normally marketed under the chemical name of the active drug ingredient.

30.     An applicant may invoke this procedure for expedited FDA approval of a generic version of an already-approved NDA drug by submitting an ANDA to FDA under 21 U.S.C. § 355(j).

31.     Instead of repeating the clinical studies of safety and efficacy conducted for the previously-approved NDA drug, a generic applicant submitting an ANDA is required to establish, among other details, that its proposed generic product is bioequivalent to the already-approved NDA drug (*i.e.*, has no significant difference in rate and extent of absorption) and that it has the same active ingredient, dosage form, dosage strength, route of administration, and labeling (with certain exceptions) as the approved NDA drug. 21 U.S.C. § 355(j)(2)(A).

32.     An ANDA applicant also is required to address each patent properly listed in the Orange Book in connection with the approved NDA drug. In particular, Hatch-Waxman requires an ANDA applicant to submit one of four types of patent certifications for each properly listed patent: (I) that the NDA-holder/patent owner has not submitted any patent information to FDA; (II) that the listed patent has expired; (III) that the patent will expire on a future date, and that the generic applicant will not market its product until after the expiration date (commonly referred to as a "paragraph III certification"); or, (IV) that the listed patent is invalid and/or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted (commonly referred to as a "paragraph IV certification"). 21 U.S.C. §§ 355(j)(2)(A)(vii)(I)-(IV). This last type of certification, a paragraph IV certification, signifies that the generic ANDA applicant intends to market its generic product prior to expiration of the subject patent.

- 8 -

33.     When an ANDA applicant submits a paragraph IV certification for a listed patent, the generic applicant must notify the NDA-holder/patent owner that it has filed an ANDA to obtain regulatory approval of a generic version of the NDA drug, and that the ANDA contains a paragraph IV certification for a listed patent (indicating that the ANDA applicant intends to market its generic product before expiration of the listed patent).   21 U.S.C. § 355(j)(2)(B).   This notice must contain a detailed statement of the factual and legal bases for the ANDA applicant's certification that the listed patent is invalid and/or will not be infringed by the manufacture, use, or sale of the generic applicant's generic drug product.   21 U.S.C. § 355(j)(2)(B)(iv).

34.     The submission of a paragraph IV certification has two important consequences.

35.     First, a generic applicant that is first to submit an ANDA containing a paragraph IV certification for a listed patent is entitled to 180 days of generic market exclusivity during which no other competing generic drug products may be marketed.     21 U.S.C. § 355(j)(5)(B)(iv).   This statutory benefit is commonly known as "180-day exclusivity."

36.     In particular, the statutory provision of the FFDCA applicable here provides that "[i]f the application contains a certification described in subclause (IV) of paragraph (2)(A)(vii) and is for a drug for which a previous application has been submitted under this section [containing] such a certification, the application shall be made effective not earlier than one hundred and eighty days after" the earlier of:  (a) the first commercial marketing of that ANDA applicant's proposed drug; or, (b) any court decision—whether it involves the first applicant or not—that the particular patent that is the subject of the paragraph IV certification is invalid or not infringed.   21 U.S.C. § 355(j)(5)(B)(iv).   Thus, unless a subsequent generic applicant can obtain a court decision of non-infringement and/or invalidity as Congress

- 9 -

intended, the approval of its ANDA can be delayed indefinitely by the purported exclusivity of the first-filer.

37.    Second, the submission of a paragraph IV certification for a listed patent constitutes an act of infringement that creates the necessary case or controversy and subject matter jurisdiction to enable an NDA-holder/patent owner to file, and a district court to resolve, an action for patent infringement—before the generic drug is actually made, used, or sold—to determine whether the generic drug, if marketed and sold in accordance with the ANDA, would infringe the relevant patent.

38.    The submission of a paragraph IV certification likewise creates the necessary case or controversy and subject matter jurisdiction for an ANDA applicant to file a declaratory judgment action against the NDA-holder/patent owner if the ANDA applicant is not sued within the applicable 45-day period, as set forth below.

39.    Upon receiving notice of a paragraph IV certification for a listed patent submitted by an ANDA applicant, the NDA-holder/patent owner may file suit for infringement of the listed patent under 35 U.S.C. § 271(e)(2)(A) within 45 days of receiving such notification. Such a suit automatically delays FDA from issuing final approval of the ANDA for up to thirty (30) months. 21 U.S.C. § 355(j)(5)(B)(iii). An ANDA applicant is statutorily prohibited from seeking a declaratory judgment during the 45-day period in which the NDA-holder/patent owner may bring suit after receiving notification of the ANDA and paragraph IV certification. *Id.*

40.    If the NDA-holder/patent owner does not file such a suit, the ANDA applicant can file and maintain a suit for declaratory judgment against the NDA-holder/patent owner to obtain patent certainty. Indeed, as explained below, Congress explicitly mandated that an

- 10 -

ANDA-filer is entitled to maintain a declaratory judgment action when it is not sued. 21 U.S.C. § 355(j)(5)(C).

    41.    Congress enacted Hatch-Waxman and the ANDA approval process in order to expedite the marketing of lower-priced generic drug products. Congress intended that the generic manufacturing and marketing of a drug should be allowed as soon as it is determined that the particular generic drug does not violate patent rights. Congress also intended that full generic competition would not be delayed indefinitely by the 180-day exclusivity period.

**II.    Congress Explicitly Mandated That An ANDA-Filer May Bring And Maintain A Declaratory Judgment Action When The Brand Company Does Not Bring An Infringement Action.**

    42.    On December 8, 2003, the MMA was signed into law. Title XI of the MMA, labeled "Access to Affordable Pharmaceuticals," amended provisions of the FFDCA and, in particular, Hatch-Waxman.

    43.    Under the MMA, an ANDA applicant who has filed a paragraph IV certification is statutorily entitled to institute and maintain an action for declaratory judgment against an NDA-holder/patent owner if: (1) the 45-day period has passed since notice of the paragraph IV certification was received; (2) neither the patent owner nor the NDA-holder/patent owner brought an action for infringement of the patent within the 45-day period; and, (3) the notice of paragraph IV certification contains an Offer of Confidential Access to the ANDA. 21 U.S.C. §§ 355(j)(5)(C)(i)(I)(aa)-(cc).

    44.    Once these three conditions are met, the MMA specifically and unequivocally provides that an ANDA applicant "may, in accordance with section 2201 of Title 28 [of the United States Code] bring a civil action under such section against the owner or holder referred to in such subclause . . . for a declaratory judgment that the patent is invalid or will not be

infringed by the drug for which the applicant seeks approval . . . ."    21 U.S.C.
§ 355(j)(5)(C)(i)(II).

45.    An ANDA applicant may exercise its right to file and maintain a declaratory judgment action under the MMA regardless of whether or not the Offer of Confidential Access to Application is accepted.

46.    The new declaratory judgment provision contained in the MMA, Section 1101 of the MMA, 117 Stat. 2066, 2454-2456, applies to all ANDAs pending on or after December 8, 2003, which includes these proceedings.

47.    Congress' intent in amending 21 U.S.C. § 355(j)(5)(C)(i) and 35 U.S.C. § 271(e)(5) was to extend to ANDA applicants, like Apotex here, the right to file and maintain a declaratory judgment action for patent noninfringement and/or invalidity against an NDA-holder/patent owner, and to direct the district court to exercise subject matter jurisdiction in such an action.

48.    The purpose of this provision was two-fold.  First, Congress enacted the declaratory judgment provision to allow generic applicants to obtain court decisions that would expedite the introduction of generic drugs by allowing the generic applicant to obtain approval of its ANDA and clear up any bottleneck in the market created by another applicant's 180-day exclusivity.  Second, Congress intended to allow generic applicants to obtain patent certainty before marketing their generic products in order to avoid potentially catastrophic infringement damages.

## III.    The '249 Patent-In-Suit.

49.    On or about November 26, 1991, the U.S. Patent and Trademark Office issued the '249 patent, entitled "Aqueous Ranitidine Compositions Stabilized With Ethanol," to David. R. Long.

- 12 -

50.     On information and belief, Glaxo purports to be the assignee and owner of the '249 patent, the term of which expires on or about November 26, 2008, according to FDA's Orange Book.

51.     On information and belief, Glaxo purports and claims to have the right to enforce the '249 patent.

52.     On information and belief, Glaxo alleges that the '249 patent covers and claims its brand-name product Zantac® Syrup, which Glaxo, doing business as GlaxoSmithKline, markets and sells throughout the United States, including in this District.

**IV.    Glaxo's Zantac® Syrup (Ranitidine Hydrochloride).**

53.     On information and belief, Glaxo, doing business as GlaxoSmithKline, purports to hold and/or have rights to approved NDA No. 19-675 for ranitidine hydrochloride oral syrup, which is sold by Glaxo, doing business as GlaxoSmithKline, throughout the United States and in this District under the brand-name Zantac® Syrup.

54.     Zantac® Syrup (Ranitidine Hydrochloride) is indicated for, among other things, the short-term treatment of active duodenal ulcer.

55.     FDA approved Zantac® Syrup (Ranitidine Hydrochloride) on December 30, 1988. Today, Zantac® Syrup remains the only ranitidine oral syrup or solution drug product on the United States market. On information and belief, Zantac® Syrup has generated, and continues to generate, substantial revenues for Glaxo (doing business as GlaxoSmithKline) in the United States that exceed many millions of dollars per year.

56.     Glaxo submitted information on the '249 patent to FDA for listing in the Orange Book. By virtue of that submission, FDA listed the '249 patent in the Orange Book in connection with the approved NDA for Zantac® Syrup.

57.    By listing the '249 patent in the Orange Book, Glaxo maintains, and has affirmatively represented to the world, that the '249 patent claims Zantac® Syrup, or a method of using that drug, and that an infringement suit could reasonably be asserted against any generic ANDA applicant, including Apotex, that attempts to seek approval for, and market, a generic version of Zantac® Syrup before patent expiration.

58.    The listing of the '249 patent in the Orange Book alone objectively creates the necessary case or controversy and subject matter jurisdiction for an ANDA-filer to file and maintain a declaratory judgment action if it is not sued by Glaxo within the requisite 45-day period.

## V.    Apotex's ANDA For Generic Ranitidine Oral Solution.

59.    Apotex has submitted an ANDA (No. 77-602) to FDA seeking approval to market Ranitidine Oral Solution USP, 15 mg/mL, a generic version of Zantac® Syrup, for the treatment of the short-term treatment of active duodenal ulcer.

60.    Apotex devoted considerable resources researching, developing, and testing of its generic ranitidine product, all toward compiling the information necessary to submit its ANDA No. 77-602 for generic ranitidine oral solution.

61.    In its ANDA, as required by statute and FDA regulation, Apotex included a paragraph IV certification to the '249 patent, stating that the '249 patent will not be infringed by the manufacture, use, offer for sale, sale, or importation of Apotex's generic ranitidine oral solution and/or that the '249 patent is invalid. This certification signified that Apotex intends to market and commercialize its generic ranitidine product prior to expiration of the '249 patent.

- 14 -

62.     Apotex's ANDA No. 77-602 is substantially complete and was accepted for filing by FDA.

63.     Apotex has satisfied all substantive requirements for approval of its ANDA No. 77-602.

64.     Apotex intends, and is prepared, to market its generic ranitidine product before expiration of the '249 patent.

65.     Despite satisfying all substantive requirements for approval, Apotex's ANDA has not been approved, and Apotex cannot commercially market its generic product and compete in the market, due to another generic applicant's purported 180-day exclusivity. On information and belief, another generic applicant purports and claims to be the first applicant to submit an ANDA for a generic version of Zantac® Syrup. As a consequence, the approval of Apotex's competing ANDA product has been delayed unless and until Apotex can obtain a court decision of non-infringement and/or invalidity of the '249 patent.

66.     In accordance with 21 U.S.C. §§ 355(j)(2)(B), Apotex provided Glaxo with notice that it submitted ANDA No. 77-602 and a paragraph IV certification to the '249 patent. This notice included a detailed statement setting forth the factual and legal bases why the '249 patent will not be infringed by the manufacture, use, offer for sale, sale, or importation of Apotex's generic ranitidine tablets.

67.     Upon receipt of Apotex's notice of paragraph IV certification to the '249 patent, Glaxo did not sue Apotex within the 45-day period for instituting an infringement suit under 21 U.S.C. § 271(e).

68.     On information and belief, Glaxo still intends to assert the '249 patent against Apotex, putting Apotex at risk of potentially catastrophic infringement damages.

- 15 -

69.    To date, Glaxo has never stated or represented that Apotex does not infringe the '249 patent, or otherwise provided Apotex with a covenant-not-to-sue as to that patent.

## VI.    Apotex's Offer Of Confidential Access To Application.

70.    Apotex---by letter and as required under 21 U.S.C. § 355(j)(5)(C)---extended to Glaxo an Offer of Confidential Access to Application to access certain information in Apotex's ANDA for ranitidine oral solution.

71.    To date, Glaxo has never accepted Apotex's Offer of Confidential Access to Application.

72.    By providing this Offer of Confidential Access to Application, and because Glaxo did not sue Apotex within 45 days of receipt of Apotex's notice of paragraph IV certification, Apotex is statutorily entitled to file and maintain a declaratory judgment action against Glaxo under 28 U.S.C. §§ 2201 and 2202, pursuant to 21 U.S.C. § 355(j)(5)(C).

## VII.    Glaxo's Litigious Conduct And Vigorous Enforcement Of Its Intellectual Property Rights.

73.    Glaxo has a long history and orchestrated program of vigorously enforcing its patents against generic applicants, including Apotex.

74.    Glaxo has filed dozens of patent infringement actions seeking to prevent companies from marketing competing generic versions of Glaxo's brand-name drugs.

75.    For example, on information and belief, Glaxo has sued numerous ANDA-filers for alleged infringement of patents purportedly covering, among others, its brand-name drugs Zantac®, Paxil®, Zofran®, Ceftin®, Imitrex®, Avandia®, Avandamet®, and Lamictal®.

76.    Glaxo has previously sued Apotex for alleged infringement of patents purportedly covering its brand-name drugs Zantac®, Paxil®, Zofran®, and Ceftin®.

- 16 -

## VIII.   Zantac® Syrup Litigation And Glaxo's Enforcement Of The '249 Patent-In-Suit.

77.    Glaxo has further demonstrated a willingness and intention to enforce the '249 patent against similarly-situated generic pharmaceutical companies that have filed an ANDA to market generic ranitidine.

78.    In particular, Glaxo filed suit against Apotex's competitor Pharmadyne in the United States District Court for the District of Maryland, asserting infringement of the '249 patent against Pharmadyne's ANDA for a generic version of Zantac® Syrup. *See Glaxo Group Limited et al. v. Pharmadyne Corp., et al.*, No. 96-455 (D.Md.)  In that litigation, Glaxo obtained a final judgment of infringement against Pharmadyne, together with a permanent injunction enjoining Pharmadyne from commercially marketing its generic product, and delaying FDA approval of Pharmadyne's ANDA, until after expiration of the '249 patent. *See Glaxo Wellcome, Inc. v. Pharmadyne Corp.*, 32 F. Supp. 2d 265 (D.Md. 1998).

79.    Glaxo also has filed suit against Apotex's competitor Teva in the United States District Court for the District of Delaware, asserting infringement of the '249 patent against Teva's ANDA for a generic version of Zantac® Syrup. *See Glaxo Group Limited v. Teva Pharmaceuticals USA, Inc. et al.*, No. 96-455 (D.Del.) That litigation is still ongoing.

## IX.    There Is A Substantial And Continuing Justiciable Controversy Between Apotex And Glaxo Regarding The '249 Patent.

80.    By preparing and filing Apotex's ANDA No. 77-602, Apotex has substantially prepared to make, use, import, offer to sell, and sell generic ranitidine oral solution in the United States. Apotex has satisfied all substantive requirements for approval and is prepared to begin commercial marketing of its competing generic product. But Apotex's approval has been delayed indefinitely by the purported 180-day exclusivity of another applicant. Apotex can obtain approval of its generic product and compete in the lucrative generic ranitidine

- 17 -

market only by obtaining a court decision of non-infringement and/or invalidity of the '249 patent. Apotex is suffering substantial harm as a result of its inability to market a competing generic ranitidine product that can be alleviated only by a declaratory judgment from this Court.

81.    Apotex also faces potentially enormous infringement liability if it commences marketing before the '249 patent expires. Apotex can alleviate this harm and obtain patent certainty only through a declaratory judgment from this Court.

82.    By submitting its ANDA No. 77-602 to engage in the commercial manufacture, use, offer for sale, sale, or importation of generic ranitidine tablets before the expiration of the '249 patent, as well as filing a paragraph IV certification to the '249 patent, Apotex has committed an artificial act of infringement sufficient to create case or controversy jurisdiction under 35 U.S.C. § 271(e)(2) and Article III of the Constitution.

83.    By submitting the '249 patent to FDA for listing in the Orange Book, Glaxo has affirmatively represented to the world, and in particular Apotex, that "a claim of patent infringement could reasonably be asserted if a person not licensed by the owner engaged in the manufacture, use, or sale of the drug." *See* 21 U.S.C. § 355(b)(1); *see also id.* § 355(c)(2). In other words, Glaxo necessarily maintains that an infringement claim on the '249 patent could be reasonably asserted against Apotex.

84.    Glaxo did not sue Apotex for infringement of the '249 patent within 45 days of receipt of Apotex's notice of paragraph IV certification. In compliance with 21 U.S.C. § 355(j)(5)(C), Apotex granted Glaxo an Offer of Confidential Access to Apotex's ANDA for generic ranitidine oral solution. As such, Apotex is statutorily entitled to institute—and this

- 18 -

Court has constitutional authority to adjudicate—a declaratory judgment action against Glaxo. 35 U.S.C. § 271(e)(5).

85.    Glaxo has demonstrated a willingness and, further, an intention to enforce its '249 patent against similarly-situated ranitidine ANDA-filers, and in fact has already successfully enforced that patent.

86.    Glaxo's listing of the '249 patent and Apotex's paragraph IV certification to that patent satisfy Article III of the Constitution by creating the necessary case or controversy between Glaxo and Apotex regarding infringement of the '249 patent.

87.    Furthermore, based upon, *inter alia*, the listing of the '249 patent and Glaxo's necessary assertion that an infringement claim could be brought against any generic ranitidine applicant; Apotex's ANDA with a paragraph IV certification to the '249 patent and act of infringement; Apotex's intention to market its generic ranitidine product before expiration of the '249 patent; Glaxo's suits against similarly-situated third-parties concerning the '249 patent; Glaxo's pattern of aggressively enforcing its patents against generic applicants, generally, and against Apotex, specifically, there is a continuing case or controversy between Apotex and Glaxo regarding the '249 patent.

88.    All of these facts, either alone or in combination, give rise to a substantial and continuing case or controversy under Article III of the Constitution over which this Court has subject matter jurisdiction.

89,    Based on these same facts, Apotex is under a reasonable apprehension that Glaxo will sue Apotex alleging infringement of the '249 patent.    Such a reasonable apprehension also creates an actual case or controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

90.    Apotex is also statutorily entitled to file and maintain this declaratory judgment action against Glaxo pursuant to the MMA.

91.    To avoid legal uncertainty, to obtain approval of its generic ranitidine product, to protect its substantial investment, to protect its anticipated future investments in its manufacturing process for generic ranitidine oral solution, and to open the generic ranitidine oral solution market, Apotex has instituted this action and is entitled to a declaration of the rights of the parties with respect to the '249 patent.

### Claim For Relief
### (Declaratory Judgment Of Non-Infringement)

92.    Apotex asserts and realleges paragraphs 1 through 92 above as if fully set forth herein.

93.    There is an actual, substantial, and continuing justiciable case or controversy between Apotex and Glaxo regarding infringement of the '249 patent.

94.    The manufacture, sale, offer for sale, use, or importation of Apotex's proposed ranitidine drug product, that is the subject of ANDA No. 77-602, does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any valid or enforceable claim of the '249 patent.

95.    Apotex is entitled to a judicial declaration that the manufacture, sale, offer for sale, use, or importation of Apotex's proposed generic ranitidine drug product, that is the subject of ANDA No. 77-602, does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any valid or enforceable claim of the '249 patent.

## Prayer For Relief

WHEREFORE, Apotex, Inc. respectfully prays for judgment in its favor and against

Glaxo:

(a)     Declaring that the manufacture, sale, offer for sale, use, or importation of
Apotex's proposed generic ranitidine drug product, that is the subject of ANDA
No. 77-602, does not and will not infringe (either literally or under the doctrine of
equivalents), directly or indirectly (either by inducement or contributorily), any
valid or enforceable claim of the '249 patent; and,

(b)     Awarding Apotex its reasonable attorneys' fees and costs of this action; and

(c)     Awarding Apotex such other and further relief as the Court may deem just and
proper.

Dated: January 24, 2007.                        Respectfully submitted,

                                                APOTEX, INC.,


                                                By: _____
                                                        Of Counsel

Conrad M. Shumadine (VSB #4325)
WILLCOX & SAVAGE, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia 23510
Telephone:  757-628-5500
Facsimile:  757-628-5566
cshumadine@wilsav.com

William A. Rakoczy
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street
Suite 500
Chicago, Illinois 60610
Telephone:  312-222-6301
Facsimile:  312-222-6321
wrakoczy@rmmslegal.com

*Attorneys for Plaintiff,*
*Apotex, Inc.*

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MERCK & CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-230 (GMS) |
| | ) | |
| APOTEX, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**[PROPOSED] ORDER TO STAY ALL PROCEEDINGS
PENDING RESOLUTION OF MERCK'S MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

IT IS HEREBY ORDERED that all further proceedings are stayed in this action

pending resolution of Merck's pending motion to dismiss for lack of subject matter jurisdiction

(D.I. 15).

SO ORDERED this _____ day of _____, 2007.

_____
U.S.D.J.

725113